Mr Justice Story
 

 delivered the opinion of the Court.
 

 This is a writ of error to the circuit, court of the district of Rhode Island, in ¿ case where the plaintiff in error was-defendant in, the court below.. The original action Was an ejectment, in the nature of a real action, according to the local practice, to recover a parcel of land in North Providence in that staté. There were, several -pleas pleaded of' the statute of limitations, Upon which it is unnecessary to
 
 *654
 
 say any thing, as the questions thereon have been waived at the bar. ' The cause was tried upon the general issue; and, by consent of. the parties, a verdict was taken for the plaintiffs, and a bill of exceptions allowed upon a pro forma Opinion given by the court in fávour of the plaintiffs, to enable the parties to bring the case.before.this Court fox a final determination. The only questions which have been discussed at the bar arise under this bill of exceptions.
 

 The facts are somewhat complicated in their details, but those, which are material, to the points before us may be summed tip in a few words.
 

 , The plaintiffs below are the heirs at law of Cynthia Jenckes,-to whom her father, Jonathan Jenckes, by his will in 1787, devised the demanded premises in fee, subject to a life estate then in being, but which expired in 1794. By his will,. Jonathan Jenckes. appointed his wife Cynthia, and- one Arthur Fenner, executrix and executor, of his will. Fenner never . accepted the appointment. At the time of his death Jonathan Jenckes lived in New Hampshire, and after his death Ids widow duly proved the will in the prop,er court of probate in that state, and took upon herself the administration of the estate'as executrix. . The estate was represented insolvent, and commissioners were appointed in the usual manner to ascertain the amount of the debts. ■ The executrix, in July 1790, obtained a license from the judge of probate in New Hampshire; to; sell so much of the real estate of the testátor, as, together with'his personal estate,'would be sufficient, to pay his debts and incidental charges.' The will was never proved, o.r administration taken out in any probate court of Rhode Island. But. the executrix, in November. 1791, sold the demanded premises to one- Moses Brovin and OzieJ Wilkinson, under.whom the defendant here .claims, by á deed, in which she recites her authority to sell as aforesaid,'and purports to act as executrix in the sale.. The "purchasers, however, not being." satisfied with her authority to- make, the sale, she entered into a covenant with them on the sanie day, by which she. bound herself to procure an act of the, legislature of Rhode Island, ratifying, and confirming the title, so granted; and, on failure thereof.
 
 *655
 
 to repay the purchase money, &c. &c. She accordingly made an Application to the legislature of Rhode Island for this purpose, stating the facts in her petition, and thereupon an act was passed by- the legislature, at Juiiesession 17.92, granting the prayer of her petition and ratifying the title. The terms pf'this act we shall have occasion hereafter to consider. In ..February, 1792, she settled her administration account m, the pirobate court, in New Hampshire, and thereupon the balance of £15
 
 7s. 7d.
 
 only remained in her hands for distribution.
 

 Such are the material facts; and the questions discussed at the bar, ultimately resolve themselves into the consideration of the validity and effect of the act of 1792., If that, act was constitutional, and. its terms, when properly con-struéd, amount t.o á legal confirmation of. the sale and the proceedings thereon, then the plaintiff' is entitled to judgment, - and the judgment below was erroneous'. If otherwise, then the judgment ought to be ajfrrmed.
 

 It is wholly unnecessary to go into an examination of the regularity .of the proceedings, of the probate court in New Hampshire, and of the.order or license, there granted to the executrix .to sell the real estate of the testator. That cause could .have no legal operation in' Rhode Island. The legis-i lativeand judicial authority of New Hampshire were bounded by the territory of that state, and could not be rightfully exercised to pass. estates lying in ahother state. The sale, therefore, made by the executrix to Moses Brown and Oziel Wilkinson, in virtue of the said license, was, utterly void; and the deed given thereupon, was; proprio vigoré, inoperative to pass any title of the testator to any lands described therein. It was a mere nullity.
 

 Upon the death of the testator; his lands in Rhode Island, if not devised, were cast by descent upon his heirs, according to the,laws of that state. If-devised, they would pass to his devisees’ according to the legal intendment of the words of the devise. . But, by the laws of Rhode Island, the probate of a will in the proper probate court is understood to be an indispensable preliminary to establish the right of the devisee, and then his title relates back to tlie death of
 
 *656
 
 the testator. No probate of this will has.ever been made, in any court of probate in Rhode Island; but that objection is not now insisted on ; and if it we.re, and the act of 1792 is to have any operation, it miist be considered as dispensing with or superseding that ceremony.
 

 The objections taken by the defendants to this act, are, in the first place, that it is void as an act of legislation, because.it transcends the authority which the legislature of Rhode, Island can rightfully, exercise under its present form of government. And, in the next place, that it is void as an act of confirmation,. because its terms are not such as to give validity to the sale and deed, so as to pass the title of the testator, even if it were otherwise constitutional.
 

 The first objection deserves grave consideration from its general importance. To all that has been said at the bar upon the danger, inconvenience and mischiefs of retrospective legislation in general, and of acts of the character of the present in particular, this Court has listened with attention, and felt the full force of the reasoning. It is an exercise of power,; which is of so summary a nature, so.fraught with inconvenience, so liable to disturb the security of titles; and to spring by surprise upon the innocent and un-lwary, to their injury and sometimes to their ruin; that a legislature invested with the power, can scarcely be' too cautious or too abstemious in the exertion of it.
 

 We must decide this objection,, however, not upon principles of public policy, but of power; aiid precisely as the state court of Rhode. Island itself ought, to decide it.
 

 Rhode Island is the only state in the union which has not .a.wntten constitution of government, containing its fundamental laws and institutions! Until the revolution in 1776, it was. governed by the charter granted by Charles II. in •the fifteenth year of his reign. That charter has ever since continued in its general provisiqns. to regulate the exercise and distribution of the powers of government. It has never befen formally abrogated by the. people; and, except so far as it has been modified to meet the exigences of the revolution, may be considered as now a fundamental law. By this charter the. power to make laws isJgranted to the gene
 
 *657
 
 "ral assembly in .thé most,ample manner, “so as such laws, &c. be not oqritrary ant} repügndnt unto, but as near as rriay . be agreeable to the laws,'&c.. of England, consideririg the nature add constitution of the place and people there,” What is the true extent of the power thus granted, must be open to. explanation, as well by usage, as by construction of- the terms, in which it is given, In a government professing ft) regard thé great rights of personal liberty and of property,, and which is required to. legislate in subordination to the general laws of England,- it would not lightly be presumed that the great'principles of Magna Charta were to be. disregarded, or that the'estates of its subjects wére- liable, fo be taken aWay without trial,' withputnotice, and without offence. Even if such'authority could be deemed to have been confided • by. the charter to the general assembly of Rhode Island,.as an exercise of transceridental soveréigrity before the revolution, it. can scarcely be imagined: that that great event could have left the people of that state'subjected to; its uncontrolled and arbitrary exercise. That, government can. scarcely be deemed to be free, where' the - rights of‘property , are left solely dependent upon the will qf a legislative bodyi'without any restraint. Thé fundáiínéntal máxrmsof a free ,government seem to require* that the.rights of personal .liberty. and'pri.vate property should- be held-sacred:-: .At leastnó court of .justice iq this country would be warranted .in assuming,-'that the power to violate and. disregard therii; á power so repugnant to the common principles of justice and civil liberty^,.lurked under any-general grant of legislative authority, or ought , to be implied from any;general expressions of the. wilt of [he people. The people ought not to be presumed to part with, rights so .vital to. their security, and well being,, without very .strong and direct expressions of such an intention, - In Terret vs. Taylor, 9
 
 Cranch,
 
 43, if was held by. thi? Court,'that a grant or. title toClánds once made by the legislatiiré to ány. person or corporation is irrevocable] átid cannot: be re-asSumed. by any' subsequent- legislative a<J.f; ánd that á different doctriné is utterly inconsistent with the-great and fundamental principle Of a republican government, and with the right qf the citizens to the free ehjoyrrient of their prpperty
 
 lawfully
 
 
 *658
 
 acquired.
 
 We
 
 know of no case., in which a legislative act.to transfer the property of A., to B.‘without his consent, has ever bee.n held a constitutional exercise of legislative power in any state in the union. On the . contrary, it has beén constantly resisted as inconsistent with just principles, by every judicial tribunal in-which it has been attempted to be enforced. -We.are'not prepared therefore'to admitthat-the people of Rhode Island have ever delegated to their legislature the power to divest the vested rights of property, and transfer them without the assent of the parties. The counsel for the plaintiffs have, themselves admitted that they cannot contend for any such doctrine.
 

 The question then arisés whether'the .act of 1792 involves any such exercise of power. It is admitted that the title of an heir by. descent in the. real estate of his ancestor, and of ¿ devisee in’an estate unconditionally devised-to'him, is, upon thte death of the párty under whom he claimed, immediately devolved upon him, and he acquires a vested estate.. But this, though true in: a general'sense, still leaves,his title encumbered with all the lietis. which have been created-by the party in his life time, or by'the law at his decease. It is not .an unqualified, though it-be a vested interest; and if confers no title, éxcept to what remains after évéry such lieh. is discharged. In the present case, the devisee under thewill of Jonathan Jenckes without doubt.took a vested estate, in'fee in the lands in Rhode -Island. But it was an estate, still subject to all the qualifications and liens which the laws of that state annexed to those lands. It is .not sufficient to entitle the' heir's of the -devisée now to recover, to establish the fact that the-estate só vested has been divested; but that it has been divested in a mariner inconsistent'with the principles of law.
 

 By the laws of Rhode Island, as indeed by the laws of-the other New England states, (for the sam.e general system pervades theriion this subject) the'real esüate o'f testators and intestates'stands chargeable with the payment of their debts, upon a deficiency of assets of personal estate. The deficiency, being once ascertained in ."the probáte court, a license is granted by-lhe proper.jútíicial tribunal, upon the
 
 *659
 
 petition of the executor or administrator, to sell so much of the real estate as. may be necessary to pay the debts and in-didental. charges.. The manner in which .the sale is made is prescribed by the general laws. In Massachusetts and Rhode Island, the license to sell is granted, as matter of course,
 
 without notice
 
 to the heirs or devisees; upon the mere production of proof from the probate court of the deficiency of personal .assets. And the purchaser at the sale, upon receiving a deed from the executor or administrator, has a com-. píete title,- and is in immediately under the deceased, and may enter and recover the possession of the estate, notwithstanding, any intermediate descents, sales, disseisins, or other -transfers of'title of seisin. If therefore the whole real estate' be necessary for the paymentof debts, and the whole is sold, the title of the heirs or devisees is, by the general operations of law, divested and superseded; and so, pro tanto, in case ,'of a partial sale..
 

 From this summary statement of thé laws ófRhqde Island, it is apparent, that the. devised under whom the. present plaintiffs claim, took'the land in controversy, subject to the lien for the debts of the testator. Her estate was a defeasible, estate, liable to be. divested upon a sale by the executrix, in the ordinary coursé of law, for the pay mem of such, debts; and all that she could rightfully claim, would be the.residue of the real .estate after such debts were fully satisfied. In point of fact; as it appears from the evidence in the case, moré debts were due in Rhode Island than the whole value for which all the estate there was. sold; and there is nothing to impeach the fairness of ihp sale. The probate proceedings further,show;' that the estate was represented to bb i.n-solvent; and iri fact, it approached very near, to ah actual insolvency. So-, that upon this posture.- of the case, if the éxeeutrix had proceeded to obtain a license to sell, ahd had sold the estate, according to the general laws of Rhode Island, the devisee and her heirs would have been divested of their whole interest in the estate; in.a manner entirely com-píete and, unexceptionable; They have been divested of their formal-title in another manner, in favour of creditors entitled to- the estate ; or rather, their, formal title has been made subservient to the paramount title. of the creditors.
 
 *660
 
 Sorbe, suggestions have been thrown out at the bar, intimating a doubt whether the statutes of Rhode Island, giving to its courts authority to, sell lands, for payment of debts, extended- to cases where the deceased was not,, at the time of his death, an inhabitant of the state. It is believed that the practical constructiosupf these statutes has been otherwise. But it is unnecessary, to .consider whether that practical construction be correct or not, inasmuch as the laws of Rhode Island, in all cases, make, the rea) estate of persons deceased, chargeable-with their .debts, whether inhabitants or not. If the authority to enforce such a charge by a sale be not confided to any subordinate court, it must, if at all, be exercised :by the legislature itself. If it be so confided, it still remains to be shown, that the legislature is precluded from a concurrent exercise óf jpower.
 

 What then aré the objections to the act of 47>92'<? .. First, it is said that it divests vested rights of property., ' But,it has been already shown that it divests ncr such rights, except in favour, of existing liens, of paramount obligation; and that the estate was vested in the devisee, expressly subject to such rights^, -Then again, it. is said-to be an act of judicial authority,'Which the legislature was not competent to exer-. ,..cise at all; or if it could exercisé it, it could be only after due notice, to all the parties in-interest, and a hearing and decree, We do- not think that the act is to be considered as- a. judicial act; but "as an exerfcise of legislation. It purports to be a legislative resolution,' and not a decree: . As to notice, if it wére necessary, (-and it certainly would be-wise and'conyenient to give notice, where extraordinary,!efforts of legislation are resorted to, which touch private rights,) it might.wefil be presumed, after the. lapse of more than thirty years; and the acquiescence of the parties for the same period, that such notice was actually given. -But by the; general laws of Rhode Island upon, this subject, no notice is required to be, or' is-in practice, given- to'heirs or devisees, in cases of sales of this nature ; and it would be strange, if the legislature' .might not do without notice the same act which it would delegate authority to another to do without notice. If the legislature had authorised a fut.Ure salé by the execu
 
 *661
 
 trix for the payment of debts,' it is not easy to perceive any sound objection to it. There is nothing in the nature of the act which requires that it should be performed by a judicial tribunal, or that it should be performed by a delegate, instead of the legislature itself. It is remedial in its nature, to give effect to existing rights.
 

 But it is said that this is á retrospective act, which gives validity to a void, transaction. .Admitting that it does so, still it does,not follow that- it may not be within 'the -scope of the‘legislative authority, iiv a government like that of -Rhode Island, if it. does not divest.the. settled rights of pro-pérty. A sale had already been made by the a ecutrix under a void authority, but in entire good faith, (for it is not attempted to be impeached for fraud;) and- the proceeds, constituting 9. fund for the payment of creditors, were ready to be distributed as soon as the sale, was made effectual to pass the title. It is but common justice to presume that the'legislature was - satisfied that the s.ale was bona fide, and, for. the full value of the estate. No creditors have ever attempted tp disturb it. The sale then was ratified by the legislature ;-not to destroy existing rights, but toeffectuate them, and in a manner beneficial to the parties. W.e cannot say that this is an excess of legislative power; unless we aré'prepared to say, that in asíate not having a written constitution, acts. of.legislation, having.a retrospective operation, aré void-as to all persons not assenting thereto, even though they may. be for beneficial purposes, and to enforce existing rights.- .We think that this, cannot be assumed .as ¿ general principle, by courts of justice;'. The present case is- not so strong in its. circumstances as that of Calder,
 
 vs.
 
 Bull,
 
 3 Dall. Rep.
 
 386,. or Rice
 
 vs.
 
 Parkman, 16
 
 Mass. Rep.
 
 226; ip both of which the resolves of the legislature were held to be constitutional..
 

 - Hitherto, the reasoning of the Court has proceeded .upon the ground that .the-act of 1792 was in its terms sufficient to give complete, validity to the sale and deed of the executrix, so as to pass the testator’s title. It .remains to consider, whether such is its predicament in point of law.
 

 For the purpose of giving a constructiqrtr to the words of the act, we have been referred to the doctrine of confirma
 
 *662
 
 tion at the common law, in deeds-between priváte persons. It is said that the act uses the appropriate words of a deed of confirmation, “ ratify and confirm;” and that a confirmation at.the common law will not make valid a1 void estate-or act, but only one which is voidable. It is.in our judgment wholly unnecessary to enter upoib aay examination of this doctrine of the common law, somd.uf which is of great.nicety and strictness;, because the present'is not an act between private persons having interests and righto to be operated upon by the terms of their deed. This,is a legislative act, and is to be interpreted according to the intention of the legislature, apparent upon its face. Every technical rule, as to . the construction or forcé óf particular terms, must yield to the clear expression, of the paramount will of the legislature. It cannot be doubted that an act of parliament. may by terms of confirmation make valid a void thing, if such is, its intent. The cases cited in
 
 Plowden,
 
 399, in
 
 Comyn’s Dig.
 
 Confirmation, D; and in 1
 
 Roll. Abridg.
 
 583, are directly in point. The only question-then is, what is the intent of the .legislature in the act of 17921 Is it.merely. to.,confirm a void, act, sé as to leave. It Void, that is to confirm' it in its infirmity1? or'is it to give general validity .and efficacy to the thing ‘done? We ..think there is no reasonable doubt of its real object and intent. It was to teonfirm the
 
 Sale
 
 made by the executrix, so as to pass the title of her testator to the purchasers. The prayer of the petition, as recited . in-the act, was, that the legislature would
 
 “,ratify wad confirm the sale
 
 aforesaid, which , was made'by a deed-executed by the :exeoutrix, &c.” . The object wás a ratification. of .the.
 
 sale,
 
 and not á mere ratification of the formal execution of the,-deed. The language of the act. is “ on due consideration whereof it is. enacted,'&c. that
 
 the prayer of the said petitioner be granted,
 
 ¿nd that the deed be, and the same is hereby ratified,and confirmed, so.far as respects,.the
 
 convey antee of dny right or interest
 
 in ..the estate mentioned in said deed, which, belonged to the. said Jonathan Jenckes at the time of his decease.” It purports therefore to grant the prayer, which asks a confirmation of .the sale, and con-, firms, the deed, as a
 
 conveyance of the right-and interest
 
 of
 
 *663
 
 the testator. It is not an act of confirmation by the owner of the estate; but an act of confirmation of the sale and conveyance,by the legislature in its sovereign capacity.
 

 We are therefore all of opinion that, the judgment of the circuit' court ought to be. reversed, and that the causé be remanded with directions to the court to award á venire facias de novo.