John J. White, Special Judge,
delivered the opinion of the court.
This is an action of debt in the name of the Governor of the the State of Tennessee, for the use of the State, against the Sheriff of Maury and his securities. It is founded upon their bond, which is dated 4th of May, 1840, and made payable to James K. Polk, Governor of the State of Tennessee, and his successors in office, for the use of the State, conditioned for the collection and payment of the State taxes for the years 1840 and 1841.
There are several counts in the declaration, and breaches assigned for the default and delinquency of the Sheriff, in his office, for the year 1841.
To this declaration there is a demurrer, which was sustained by the Circuit Judge, and judgment given for the defendants, from which there is an appeal in error to this court.
The only question which arises here, is in regard to the validity of the bond which was given by the Sheriff and his securities. This bond embraces both years of his official term, and it is contended, that the County Court had no authority to take such a bond, and that the same is therefore void. In Mabry vs. Tarver, 1 Hump. 94, it was decided by this court, that under the act of 1835, ch. 15, sections 1 and 2, (N. & C. 621,) a bond given by the Sheriff for the collection and payment of the taxes for two years, his entire term, was a good bond. . And this is evidently the true construction of that act, for it says, the Sheriff “shall give bond,” &c., not two bonds, nor bonds for each successive year, but he is to give bond conditioned for the collection and payment of the taxes by him collected, or which ought to have been collected, on or before the first Monday of October, in each and every year in which he shall collect the taxes, which could be as well included in one bond as two. There is nothing in the language or policy of that act, which wouLd make such a bond void, although an annual bond given by the Sheriff would likewise be good, as held by this court in Nevil and securities vs. Day, 3 Hump. 37.
Under the act then of 1835, this is a good bond, and it only *167 remains to enquire whether at the time when this bond was given, the act of 1835 had been repealed by that of 1839-40, which brings us to the consideration of that act. By the first section it is enacted, “that the first and second sections of said act, (referring to the act of 1835,) which require bonds to be executed by Sheriffs and their securities, for the proper collection and payment of the State and County revenue, shall be construed to require said bonds to be'given hereafter every year.” Pamphlet Acts of 1839-40, p. 235.
With regard tef this section of the act, with the highest respect for the legislature, as a co-ordinate branch of the government, we are constrained to say, that we regard it as clearly an unconstitutional enactment, and whenever that is the case, it becomes the solemn duty of the Judiciary, so to declare it, as the Constitution is the paramount law.
The argument upon this point may be stated in few words. Under the Constitution, the powers of the government are divided into three distinct departments, the Legislative, Executive and Judicial. And each department is prohibited from exercising any of the powers properly belonging to either of the others. See Art. 2, sections 1, 2, N. & C. 50. It is upon this 'division of power, that the security of the citizen, as well as the limitations upon power contained in the Constitution, mainly depend for their preservation. To the Legislature belongs the power of enacting such laws, within the limits of the Constitution, as the policy of society and its varying interests may seem to inquire. But after their enactment, it is then the province of the Judiciary, to ascertain their meaning, and determine upon their construction. Any other doctrine would destroy the checks contained in the Constitution against the abuse of power, and tend to a concentration of all power in a single department of the government, It is unnecessary to dwell upon this point farther than merely to say, the legislature of 1835 enact a law in reference to the collection of the revenue. That of 1839-40, without repealing that law or enacting a different one so far as the first section of the act is concerned, which we are now considering, which it was perfectly competent for them to do, undertakes to say what is the meaning of the former *168 law, and to decide upon its construction. This we think was beyond their power.
We come now to the second section of the act of 1839. By this section, it is made “the duty of the County Court Clerk, on the first Monday in April, in each year, to call on the collectors to renew their bonds.” Neither this, nor the preceding section, purports in terms to repeal the act of 1S35, nor is there such a repugnance to that act as makes it a repeal by implication. The language here used, is merely directory, imposing a certain duty upon the Clerk, and which would no doubt make it the duty of the collector to renew his bond when called on. But there is no penalty imposed upon the Clerk for not performing this duty, or. upon the collector for not complying with the requisition. Under this law, as well as under the former, there is no doubt an annual bond given by the Sheriff would be good. But still it by no means follows, that a bond given for two years by the Sheriff, as required by the first act, would not likewise be valid. We have no means of judging of the meaning of the legislature, except by the language they have used. And they nowhere declare in this act, that a bond given for two years shall be void; and if such had been their intention, it is to be supposed they would have so expressed it, and made ample provision for the protection of the public revenue, and to secure the due execution of an annual bond.
Collectors are required by this section, to renew their bonds, which supposes they may have been once given for the whole term, but that the public interest requires their renewal. This statute, as well as that of 1835, concerns the public good, and it is considered a correct principle wdth regard to such statutes, that they should receive a liberal construction, and such an one as will render them effectual. And this court should certainly hesitate, without the most urgent necessity, to place such a construction upon the act of 1839, as would endanger the security of the public revenue, and permit it to be plundered by a delinquent public officer without any security, which might be the result of a different construction of this act.
The view of it here taken, imposes no hardship upon the *169 obligors in the bond, because they are presumed to enter into it, with a full knowledge of the extent of their obligation.
Note. — Judicial acts of a legislature. See 2 Peters* Rep. 413: 3 Greenleaf, 334: 1 Tí. H. 199: 3 Dallas, 386* 2 Crancli, 272: 4 Pick. 23: Jones vs. Perry, 10 Yerg.: 2 Pet. 660. 15 Mass, 328 : 4 Monroe, 91: 3 Greenleaf, 326: 4 Greenleaf, 140: 4 Yerg. 202.
These acts, as we think, may well stand together. Under the act of 1835, the Sheriff has given bond for the whole term. Under that of 1839, he is required to renew it for the second year, which if he does, it is to be presumed the public interest will be advanced by it; if he fails to renew it, the public are still protected by the security which has already been given upon the old bond.
With regard to the other objection, that the bond in this case is conditioned for the collection and payment of the taxes, without stating that it is to be to the Treasurer, this court held in the case of Miller et al. vs. Moore, 2 Hump. 423, that under the second section of the act of 1835, where the words “to the Trustee of the county” were omitted, that would not vitiate the bond, which is decisive upon this point.
The judgment of the Circuit Court must be reversed, the demurrer overruled, and the cause remanded for further proceedings.