Mr. Justice SWAYNE
delivered the opinion of the court:
The whole case resolves itself into a question of the power of the city to issue bonds for the purpose stated.
The act incorporating the city, approved February 24, 1847, provides as follows :
“ Sect. 27. That whenever, in the opinion of the City Council, it is expedient to borrow money for any public purpose, the question shall be submitted to the citizens of Dubuque, the nature and object of the loan shall be stated, and a day fixed for the electors of said city to express their wishes, the like notice shall be given as in cases of election, and the loan shall not be made unless two-thirds of all the votes polled at such election shall be given in the affirmative.”
“By an act approved January 8th, 1851, the act of incorporation was “ so amended as to empower the City Council to levy annually a special tax to pay interest on such loans as are authorized by the 27th section of said act.”
An act approved January 28th, 1857, contains these provisions :
“ That the city of Dubuque is hereby authorized and empow *203 ered to aid in the construction of the Dubuque Western and tho Dubuque, St. Peter’s & St. Paul Eailroad Companies, by issuing $250,000 of city bonds to each, in pursuance of a vote of the citizens of said city, taken in the month of December, A. D. 1856. Said bonds shall be legal and valid, and the City Council is authorized and required to levy a special tax to meet the principal and interest of said bonds, in case it shall become necessary from the failure of funds from other sources.”
“ The proclamation, the vote, and bonds issued or to be issued, are hereby declared valid, and the said railroad companies are hereby authorized to expend the money arising from the sale of said bonds, without the limits of the city and county of Dubuque, in the construction of either of said roads, and neither the city of Dubuque, nor any of the citizens, shall ever be allowed to plead that said bonds are invalid.”
By these enactments, if they are valid, ample authority was given to the city to issue the bonds in question. The city acted upon this authority. The qualifications coupled with the grant of power contained in the 27th section of the act of incorporation are not now in question. If they were, the result would be the same. When a corporation has power, under any circumstances, to issue negotiable securities, the bond fide holder has a right to presume they were issued under the circumstances which give the requisite authority, and they are no more liable to be impeached for any infirmity in the hands of such a holder than any other commercial paper.* If there were any irregularity in taking the votes of the electors or otherwise in issuing the bonds, it is remedied by the curative provisions of the act of January 28, 1857.
Where there is no defect of constitutional power, such legislation, in cases like this, is valid. This question, with reference to a statute containing similar provisions, came *204 under the consideration of the Supreme Court of Iowa, in McMillen v. Boyles, * and again in McMillen et al. v. The County Judge and Treasurer of Lee County.† The validity of the act was sustained. "Without these rulings we should entertain no doubt upon the^ubjeet.‡
It is claimed “ that the legislature of Iowa had no authority under the Constitution to authorize municipal corporations to purchase stock in railroad' companies, or to issue bonds in payment of such stock.” In this connection our attention has been called to the following provisions of the Constitution of the State:
“ Art. 1. § 6. All laws of a general nature shall have a uniform operation.”
“Art. 8. § 1. The legislative authority of the State shall be vested in a Senate and House of Representatives, which shall be designated as the General Assembly of the State of Iowa,” &c.
“Art. 7. The General Assembly shall not in any manner create any debt or debts, liability or liabilities which shall, singly or in the aggregate, exceed the sum of one hundred thousand dollars, except,” &e. The exceptions stated do not relate to this case.
“ Art. 8. § 2. Corporations shall not be created in this State by special laws, except for political or municipal purposes, but the General Assembly shall provide by general laws for the organization of all other corporations, except corporations with banking privileges, the creation of which is prohibited. The stockholders shall be subject to such liabilities and restrictions as shall be provided by law. The State shall not, directly or indirectly, become a stockholder in any corporation.”
Under these provisions it is insisted,—
1. That the general grant of power to the legislature did not warrant it in conferring upon municipal corporations the power which was exercised by the city of Dubuque in this case.
*205 2. That the seventh article of the Constitution prohibits the conferring of such power under the circumstances stated in the answer,- — debts of counties and cities being, within the meaning of the Constitution, debts of the State.
3. That the eighth article forbids the conferring of such power upon municipal corporations by special laws.
All these objections have been fully considered and repeatedly overruled by the Supreme Court of Iowa: Dubuque Co. v. The Dubuque & Pacific R. R. Co. (4 Greene, 1); The State v. Bissel (4 Id., 328); Clapp v. Cedar Co. (5 Iowa, 15); Ring v. County of Johnson (6 Id., 265); McMillen v. Boyles (6 Id., 304); McMillen v. The County Judge of Lee Co. (6 Id., 393); Games v. Robb (8 Id., 193); State v. The Board of Equalization of the County of Johnson (10 Id., 157). The earliest of these cases was decided in 1853, the latest in 1859. The bonds were issued and put upon the market between the periods named. These adjudications cover the entirely ground of this controversy. They exhaust the argument» upon the subject. We could add nothing to what they contain. We shall be governed by them, unless there be something which takes the case out of the established rule of this court upon that subject.
It is urged that all these decisions have been overruled by the Supreme Court of the State, in the later case of the State of Iowa, ex relatione, v. The County of Wapello,* and it is insisted that in cases involving the construction of a State law or constitution, this court is bound to follow the latest adjudication of the highest court of the State. Leffingwell v. Warren† is relied upon as authority for the proposition. In that case this court said it would follow “the latest settled adjudications.” Whether the judgment in question can, under the circumstances, be deemed to come within that category, it is not now necessary to determine. It cannot be expected that this court will follow every such oscillation, from whatever cause arising, that may possibly occur. The earlier decisions, we think, are sustained by reason and au *206 thority. They are in harmony with the adjudications of sixteen States of the Union. Many of the cases in the other States are marked by the profoundest legal ability.
The late case in Iowa, and two other cases of a kindred character in another State, also overruling earlier adjudications, stand out, as far as we are advised, in unenviable solitude and notoriety. However we may regard the late case in Iowa as affecting the future, it can have no effect upon the past. “ The sound and true rule is, that if the contract, when made, was valid by the laws of the State as then expounded by all departments of the government, and administered in its courts of justice, its validity and obligation ^cannot he impaired by any subsequent action of legislation, for decision of its courts altering the construction of the llaw.”*
The same principle applies where there is a change of judicial decision as to the constitutional power of the legislature to enact the law. To this rule, thus enlarged, we adhere. It is the law of this court. It rests upon the plainest principles of justice. To hold otherwise would be as unjust as to hold that rights acquired under a statute may be lost by its repeal. The rule embraces this case.
Bonds and coupons, like these, by universal commercial usage and consent, have all the qualities of commercial paper. If the plaintiffs recover in this case, they will be entitled to the amount specified in the coupons, with interest and exchange as claimed. †
Ve are not unmindful of the importance of uniformity in the decisions of this court, and those of the highest local courts, giving constructions to the laws and constitutions of their own States. It is the settled rule of this court in such cases, to follow the decisions of the State courts. But there have been heretofore, in the judicial history of this court, as doubtless there will be hereafter, many exceptional cases. We shall never immolate truth, justice, and the law, because *207 a State tribunal bas erected the altar and decreed the sacrifice.
The judgment below is reversed, and the cause remanded for further proceedings in conformity to this opinion.
Judgment and mandate accordingly.

 Commissioners of Knox Co. v. Aspinwall, 21 Howard, 539; Royal British Bank v. Turquand, 6 Ellis & Blackburne, 327; Farmers, Land & T v. Curtis, 3 Selden, 466; Stoney v. A. L. I. Co. 11 Paige, 635; Morris Canal & B. Co. v. Fisher, 1 Stockton’s Chancery, 667; Willmarth v. Crawford, 1 Wendell, 343; Alleghany City v. McClurkan, 14 Pennsylvania State, 83

 6 Iowa, 305.

 Id., 391.

 Wilkinson v. Leland, 2 Peters, 627; Satterlee v. Matthewson, 2 Id., 380; Baltimore & S. R. Co. v. Nesbit et al., 10 Howard, 395 ; Whitewater Valley Canal Co. v. Vallette, 21 Id., 425.

 13 Iowa, 390.

 2 Black, 599.

 The Ohio Life & Trust Co. v. Debolt, 16 Howard, 432.

 White v. The V. & M. R. R. Co., 21 Howard, 575; Commissioners of the County of Knox v. Aspinwall et al., 21 Id., 539.