Argument for Appellants.

### No. 1,964.

CHARLES J. BRENHAM et al., RESPONDENTS, v. ALANSON STORY et als.,
APPELLANTS.

ACT AUTHORIZING AN ADMINISTRATOR TO SELL REAL PROPERTY.—An Act of the
Legislature authorizing an administrator to sell real property belonging to the
estate of his decedent, except in satisfaction of the lien of creditors, for the sup-
port of the family, or to pay the expenses of administration, is unconstitutional.

ESTATES OF DECEASED PERSONS.—HEIR.—Upon the death of the ancestor, the
heir becomes vested at once with the full property, and his estate is indefeasi-
ble, except in satisfaction of the liens above mentioned and the temporary right
of possession of the administrator, and the Legislature has no more right to order
a sale of his vested interest in his inheritance than it has to direct the sale of the
property of any other person acquired in any other way.

IDEM.—ADMINISTRATOR—DUTY OF.—It is no part of the duty or authority of
the administrator to manage the estate for the benefit of the estate or of the
heirs; so far as they are concerned, it is his duty, simply, to preserve the estate
until distribution.

APPEAL from the District Court of the Third District,
Santa Cruz County.

The case is stated in the opinion.

*Wm. T. Wallace*, for Appellants.

The Acts of the Legislature, put in evidence by the plain-
tiffs, are unconstitutional. (*Wilkinson* v. *Leland*, 2 Peters,
627; *Florentine* v. *Barton*, 2 Wallace, 210; *Powers* v. *Bergen*,
2 Selden, 358; *Taylor* v. *Porter*, 4 Hill, 140; Constitution of
California, Article I, Secs. 1, 8, 21; *State of Iowa* v. *Co. of
Wapello*, 13 Iowa, 412; *Sherman* v. *Buick*, 32 Cal. 249;
*Dentzel* v. *Waldie*, 30 Cal. 144; *People* v. *Supervisors of West-
chester*, 4 Barb. 70; *Benson* v. *Mayor et als.*, 10 Barb. 223;
*People* v. *Edwards*, 15 Barb. 529; *Jones* v. *Perry*, 10 Yerger,
59; *Ervine's Appeal*, 16 Penn. 256; *John Lane* v. *Wm. M.
Dorman*, 3 Scammon, 238.)

We maintain that the Legislature could not empower the
administrator "*eo nomine*" or otherwise to sell, "*as in the
judgment of the said administrator shall best promote the inter-
ests of those who are entitled to said estate.*" It will be borne
in mind that there were absolutely *no debts owing by the estate
whatever*.

(T.)

. The estate, as vested in the heirs, was, in contemplation of law, absolute, except as it might be affected by the *lien of debts owing by the decedent,* and there being here *no debts whatever,* it was, *in fact, indefeasible.*

In *Wilkinson* v. *Leland* (2 Peters, 657), the Court say: "We know of no case in which a legislative Act to transfer the property of A. to B. without his consent, has ever been held a constitutional exercise of legislative power in any State of the Union."

Again (at p. 660), the Court say: "What, then, are the objections to the Act of 1792? First, it is said that it divests vested rights of property. But it has been already shown that it divests no such rights except in favor of existing liens of paramount obligation, and that the estate was vested in the devisee, expressly subject to such rights." The power of the Legislature to pass the Act brought in question in that case was rested, by the Court, wholly upon the fact that it was merely the enforcement of previously existing liens of paramount obligation upon the property, and without this feature the Act would have been held invalid.

· The two last cases cited respectively from 4 Scammon's R. and 16 Massachusetts R., have not the slightest application here. They were authorizations of *guardians* of *minors* to make sales of the estates of their wards. The distinction between the general duties and powers of guardians upon the one hand, and administrators upon the other, in relation to sales of estates, is well defined. An administrator cannot, according to the nature of his office, sell the real estate which has vested in the heir of descent, *except to pay the debts of his ancestor,* which are liens on that estate. But the nature of the office of guardian is utterly different. Those whose estates are to be sold by guardians must be under guardianship in the first instance. Was Mrs. White (now Allen) under guardianship? Neither she nor her children *ever had a guardian,* as appears by the record. And if any Court had attempted to appoint a guardian for her the appointment would have been void for want of power to make it.

A sale made by an administrator under a special Act of the Legislature, *unless made for the purpose of paying debts of decedent*, will not be maintained by the Court, because it would *divest the estate* of the heir *absolutely vested in him.*

The counsel for the respondents has not produced a single authority in which the converse of this is asserted by any Court or text writer upon the law. The provisions of our State Constitution (cited in the printed points) are aimed directly against such legislation as that in question here.

*Williams & Thornton,* for Respondents.

Appellants contend that "the Acts of the Legislature, put in evidence by the plaintiffs, are unconstitutional."

Upon an examination of authorities, we can find none to support this assertion; nor can we discover wherein the Constitution has been violated. The Acts in question are essentially remedial, and cannot, therefore, be regarded as a legislative usurpation of judicial functions. No question as to notice can arise, for the administrator is the representative of all parties interested in the estate, whether heirs, devisees or creditors. Similar statutes have been passed in many States of the Union, and have been upheld, it is believed, without a single exception. The property descends to the heirs and devisees, charged with the payment of all debts, and subject to all liens and incumbrances. Their interest is only in the remainder, after the payment of debts and the discharge of such liens. In other words, subject to the rights and lawful acts of the administrator. Such private sales, therefore, do not disturb vested rights. Authorities are too numerous on the subject to require extended argument. (*Watkins* v. *Holman et al.*, 16 Peters, 59, *et seq.; Wilkinson* v. *Leland*, 2 Peters, 658; *Watson* v. *Mercer,* 8 Peters, 88; *Florentine* v. *Barton*, 2 Wallace, 210; *Mason* v. *Wait,* 4 Scammon, 134; *Rice et al.* v. *Parkman,* 16 Mass. 326.)

The Acts of the Legislature under consideration do not differ in any material respect from the similar Acts authorizing the sale of lands belonging to the estate of Ritchie, and of Folsom, and many others; all of which have been upheld

and declared constitutional by the Supreme Court of this State. This decision, and an extended argument upon the subject of special Acts, is found in the case of *Smith* v. *The Judge of the Twelfth District* (17 Cal. 552, *et seq.*), and would seem to settle this question.

The cases cited by the learned counsel from 4, 10 and 15 Barber, are not in point. No question growing out of the administration of any decedent's estate, or in regard to the rights or duties of administration, was involved. They simply decide that no Legislature has authority to disturb vested rights or impair the obligations of contracts.

We do not controvert the correctness of the decision in *Lane* v. *Dorman et ux.* (3 Scammon's Rep. 238.) In. that case the Legislature undertook to perform acts which were purely judicial, and, for this reason alone, the Act of the Legislature therein referred to was held to be unconstitutional and void.

Lane was not an administrator, nor were any questions touching the rights and duties of administrators involved. The acts attempted by the Legislature were clearly judicial, and therefore *ultra vires*.

"It is not the mode of exercising the power, but the right, that is denied by the Constitution." If the right be not denied, the power may be exercised by the enactment of general or special laws. The right exercised by the Legislature of California, under the general law, to subject estates to the payment of debts and expenses of administration, has never been denied, and the special act in question is only another mode of securing the same object. The case of *Edwards* v. *Pope* is instructive on this subject.

The counsel for appellants, in the Court below, laid great stress upon the fact that the Act of the Legislature authorized the administrator to sell, "not for the payment of debts—not for the maintenance of infants—but only as in his judgment should best promote the interests of those entitled to the estate;" and from this he argued an arbitrary power, not connected with the administration of the estate, and which the Legislature could not, therefore, confer.

It will be perceived that the power is not to Charles Allen, but to the *administrator*, whoever he may be, and must therefore be exercised according to the nature of his office. He can perform no acts under it, but such as pertain to the administration of the estate, and they are defined and limited to particular objects by general legislation, as the payment of debts, etc. In other words, the power being to the administrator, *eo nomine*, must be construed according to the nature of that office, and be exerted in such acts only as are required of it. Had the power been to Charles Allen individually, disconnected with the office of administrator and its incidental liens, to sell the lands of the estate to pay himself or any other preferred person, it would be somewhat analogous to the case of *Lane* v. *Dorman*, and be liable to such criticism.

TEMPLE, J., delivered the opinion of the Court:

This is an action to recover real estate. Judgment was rendered for the plaintiff. This appeal is taken from the judgment and from an order denying defendant's motion for a new trial.

Both parties claim under Charles White, who purchased the property in 1850, then being the husband of the present Mrs. Allen, wife of Charles E. Allen. White died intestate in 1853, and Allen was appointed administrator of his estate in 1854, and, so far as appears, is still acting in that capacity.

White filed his petition before the Board of Commissioners of the United States, to ascertain and settle private land claims in California, in 1853, asking a confirmation of the land to himself. After his death, the proceedings were continued in the name of his heirs—the widow and minor children—and the patent was afterwards issued to Ellen E. White *et al.*, widow, and heirs of Charles White, deceased.

The plaintiff put in evidence an Act of the Legislature, approved April 6, 1860, the first section of which, as amended April 15, 1861, enacts that "the administrator of Charles White, deceased, now or hereafter to be appointed, is hereby

authorized to sell at public or private sale, at his discretion, and without first having obtained an order of the Probate Court therefor, the whole or any portion of the real estate, or any right, title or interest therein claimed, held or owned by the said Charles White at the time of his death, as in the judgment of the said administrator will best promote the interest of those entitled to the estate."

The second section requires a report of the sale or sales to the Probate Court of Santa Clara County, and authorizes the Probate Judge, either in term or in vacation, in open Court or in chambers, to "examine the same and confirm or set aside said sale or sales, as he may deem just and proper and for the interest of said estate."

The third section provides for a conveyance, and that "the title so conveyed shall be as valid as if made under an order of the Probate Court in due course of law."

Under this Act, Allen, the administrator, conveyed to Samuel J. Hensley, March 18, 1862. The deed purports to have been executed in pursuance of the Act; but at the time it was executed, the sale does not appear to have been reported to or approved by the Probate Judge. On the 8th of August, A. D. 1862, Allen reported to the Probate Court that he had sold the land to Hensley for fifteen hundred dollars; that the said sum was the fair value of the land; that it was for the best interest of the estate that the land be sold, and also, that there was no money on hand belonging to the estate, and the sale was necessary to realize means toward defraying urgent expenses of the estate.

On the 9th of August, 1862, the Probate Judge entered an order confirming the sale as just and proper, and for the interest of said estate. Plaintiff proved the payment of the purchase money, and that, after the order confirming the sale, the deed was withdrawn and re-delivered.

. The defendant objected to this deed as evidence, on the ground, among others, that the acts of the Legislature were unconstitutional and void, and now contends here that the Legislature could not empower the administrator to sell the whole or a part of the real estate of Charles White, deceased, as in the judgment of the administrator would best promote

the interests of those entitled to the estate. That the estate upon the death of White was absolutely vested in his heirs, subject to the lien of the creditors of White, and there not appearing to be any debts owing by the decedent, the title of the heirs was absolute and indefeasible; and that an Act to authorize the administrator to sell the property of the estate, except in satisfaction of the lien of the creditors or for the support of the family of the deceased, would be a legislative transfer of the property of the heirs without their consent.

The right of an heir to his inheritance depends upon positive law, and is not a natural or an absolute right. It is competent for the Legislature to change the rule of inheritance, or to restrict the testamentary power. It may provide, as it has done, that the heir or devisee shall take subject to certain burdens, as the payment of the debts of the deceased, and the right of the Court to appropriate some portion of the estate for the support of the family of the decedent during the administration.

It is undoubtedly within the scope of legislative authority, to direct that the debts be paid from the realty instead of the personal property; or, as is done in some States, that the heir need not be made a party to the proceeding to obtain a sale of the real estate, or that the administrator may sell without any order of the Court whatever. But all these Acts must be for the satisfaction of these liens, which are held to be paramount to the claim of the heirs or devisee.

Laws which prescribe the manner in which these paramount claims shall be satisfied, are held to be entirely remedial; and it is upon this ground that the Courts have upheld Acts authorizing the administrator to sell at private sale—or in some mode not provided in the general law—the land of a deceased person. Such Acts have been uniformly held valid where it appeared to be in execution of these liens, and the Act was not liable to the objection that in passing it the Legislature usurped judicial functions; as, for instance, in directing a sale to pay a particular debt, thereby ascertaining the existence of a debt by legislative enactment.

In all the cases to which our attention has been called by the plaintiff, the decision was expressly put upon this ground. The duty of an administrator is to take charge of the estate for the purpose of settling the claims, and when they have been satisfied, it is his duty to pass it over to the heir, whose absolute property it then becomes. To allow the administrator to sell, to promote the interests of those entitled to the estate, would be to pass beyond the proper functions of an administrator, and constitute him the forced agent of the living for the management of their estates.

In *Wilkinson* v. *Leland* (2 Peters, 627), the decedent was a resident of New Hampshire at the time of his death, and his will was probated there. No administration was had in Rhode Island, where the land was located. The Legislature of Rhode Island, long after the sale, confirmed the sale and conveyance made by the executrix. Judge Story pronounced the decision of the Court, sustaining the Act on the ground that the title of the devisee, though a vested estate in a general sense, was incumbered by the lien created by the testator in his life time, and by the law at his decease, and was therefore a qualified, though a vested interest, and the sale was made by virtue of and for the satisfaction of these liens. The law created no right, but rather gave effect to existing rights, and was entirely remedial in its character. It divested no rights, except in favor of those of paramount obligation.

The case of *Watson* v. *Mercer* (8 Peters, 88), was in regard to a legislative Act confirming the deed of a married woman, which had not been executed in the mode prescribed by law. The Court sustained the Act, holding that the Constitution of the United States did not restrict the States from passing retrospective laws, but only *ex post facto* laws, and had reference to criminal laws alone; that the law in question did not impair but confirmed the contract upon which it acted. Though upon a similar question, it does not touch the particular question under discussion.

In the case of *Watkins* v. *Holman* (16 Peters, 25), a sale made by an administratrix under a special Act was sustained, on the principle established in *Wilkinson* v. *Leland* (*supra.*) *Florentine* v. *Barton* (2 Wallace, 210), was a case where a spe-

cial Act authorized the Court to decree a private sale, but did not provide for notice to the heirs.    The Act was held valid on the ground that the Court was required by the Act to ascertain in advance the necessity of the sale according to the general law upon the subject, which authorized a sale of real estate when there was an insufficiency of personal property to pay the debts.

The other cases cited by plaintiff have reference to the sale of the lands of infants by their guardian.    The power of a guardian over the property of his ward rests upon an entirely different principle, and the cases are not, therefore, in point.

In this case it does not appear, from the proceedings in the Probate Court upon the sale, that there were any debts of the deceased at the time of the sale, nor does it appear that the sale was to raise money for the support of the family, or to pay the expense of the administration, unless the statement in the report of the sale, that there was no money on hand, and it was required to defray urgent expenses of the estate, goes to that extent; and that statement, made eight years after administration was granted, may well be considered as referring to the expense of managing the property, without reference to the purposes of administration, especially when the proceedings are under an Act which authorizes a sale for the benefit of those entitled to the estate.

The special Act does not purport to authorize a sale for the payment of the debts, allowances to the family, or expenses of administration; on the contrary, it expressly authorizes a sale for the purpose of speculation in the interest of the owners of the property—that is, the heirs.    It provides that the administrator may sell at his discretion "the whole or any portion of the real estate, or any right, title or interest therein claimed, held or owned by the said Charles White at the time of his death, as in the judgment of the administrator will best promote the interest of those entitled to the estate."

The Probate Judge may confirm or set aside the sale, as he may deem just and proper, and for the best interests of the estate.

The administrator, therefore, was authorized to sell, not to pay debts; but when in his judgment a sale would advance the interests of those entitled to the estate, the sale was to be in the interest of the heirs as owners, and not to satisfy the paramount lien imposed by law upon the property of the decedent. It is clearly an attempt to use the office of administrator to speculate with the estate of the heirs, and not to administer the estate of the deceased.

This is plainly beyond the power of an administrator, as such. It is no part of his duty or authority to manage the estate for the benefit of the estate or of the heirs. So far as they are concerned, it is his duty, simply, to preserve the estate until distribution. He cannot make investments for them, or satisfy adverse claims, or sell because the estate would profit by it. (In the matter of the estate of E. Knight, 12 Cal. 200.)

Upon the death of the ancestor the heir becomes vested at once with the full property, subject to the liens we have mentioned; and subject to these liens and the temporary right of possession of the administrator, he may at once sell and dispose of the property, and has the same right to judge for himself of the relative advantages of selling or holding that any other owner has. His estate is indefeasible, except in satisfaction of these prior liens, and the Legislature has no more right to order a sale of his vested interest in his inheritance, because it will be, in the estimation of the administrator and the Probate Judge, for his advantage, than it has to direct the sale of the property of any other person acquired in any other way.

There is no force in the suggestion of plaintiff that the authority to sell passing to the administrator, as such, is to be presumed to be for the purposes of administration only. The special Act is not silent as to the purposes for which the sale may be made, and therefore we cannot look to the general duties of an administrator to ascertain those purposes, or the circumstances which will authorize the exercise of the power granted.

It is not contended in this case that the Legislature has the power to direct the sale and conveyance of private prop-

Points decided.

erty for other than public uses. This question was fully considered, however, by us in *Sherman* v. *Buick* (32 Cal. 241), and decided in the negative, and that conclusion is fully sustained by the numerous authorities cited by the defendant.

Entertaining these views, we think the deed from Allen, administrator of Charles White, deceased, to Hensley, invalid, and the judgment is reversed and a new trial ordered.

WALLACE, J., having been of counsel, did not participate in the decision of this cause.