PARSHALL v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. July 16, 1906.)

No. 2,404.

Postoffice—Railway Mail Clerks—Expenses—Liability of Government.
    Rev. St. § 3678 [U. S. Comp. St. 1901, p. 2453]; 1 Supp. Rev. St. p. 201; Rev. St. §§ 3690, 3691 [U. S. Comp. St. 1901, p. 2471], declare that all sums appropriated for the various branches of expenditure in the

public service shall be applied solely to the objects for which they are respectively made, and for no others. Section 3679 [U. S. Comp. St. 1901, p. 2454] provides that no department of the government shall expend in any one fiscal year a sum in excess of appropriations made by Congress for that fiscal year, or involve the government in any contract for the future payment of money in excess of such appropriations. The annual appropriations for the post office department provide for actual and necessary expenses by railway postal clerks "while actually traveling on business of the department, and away from their several designated headquarters, etc. *Held*, that under such acts, a railway postal clerk could not recover against the United States as on an implied contract for expenses of bed and board while on his regular run, in addition to his fixed salary.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

C. O. Tichenor and Frank Schibsby (George Reinhardt, on the brief), for plaintiff in error.

D. P. Dyer, U. S. Atty., and E. P. Johnson, Asst. U. S. Atty., for defendant in error.

Before VAN DEVANTER and ADAMS, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge. This is an action by the plaintiff to recover for his expenses incurred between August 15, 1899, and November 15, 1904, aggregating $1,200 as a railway postal clerk while engaged on his regular runs.

The petition alleges that he was duly appointed and commissioned as such railway postal clerk by the Postmaster General under section 4025, Rev. St. U. S. [U. S. Comp. St. 1901, p. 2738]; that while he was acting in the capacity of such clerk, by orders and directions of the Postmaster General, and other superior officers, he was compelled to travel a great part of the time on business of the Post Office Department; that the said officers had authority to assign him to any route of travel whatsoever, and to change this assignment at wil.; that while so traveling he was necessarily absent from his headquarters as established and designated by his superior officers, to wit: St. Louis, Missouri, and was obliged to expend the sums of money mentioned for hotel bills and other necessary traveling expenses, for which expenses he claims he is entitled to be reimbursed "as upon an implied contract." The account presented by him in his petition is as follows:

From August 15, 1899, up to and including June 30, 1900..........$200 00
From July 1, 1900, up to and including June 30, 1901.............. 210 00
From July 1, 1901, up to and including June 30, 1902............. 220 00
From June 1, 1902, up to and including June 30, 1903............. 240 00
From July 1, 1903, up to and including June 30, 1904............. 240 00
From July 1, 1904, up to and including November 15, 1904............ 90 00

All of said sums being a total of................................$1200 00

The petition alleges as authority for these reimbursements section 2 of the Revised Postal Laws and Regulations, and the following acts of Congress: Act March 1, 1899, c. 327, 30 Stat. 964 [U. S.

Comp. St. 1901. p. 2730] ; Act June 2, 1900, c. 613, 31 Stat. 259 [U. S. Comp. St. 1901, p. 2737] ; Act March 3, 1901, c. 851, 31 Stat. 1105 : Act April 21, 1902, c. 563, 32 Stat. 115 ; Act March 3, 1903, c. 1009, 32 Stat. 1173. A demurrer to this petition was interposed by the United States Attorney, which was sustained by the court. The plaintiff below brings the case here on writ of error.

The contract of service between the plaintiff and the government has its sole foundation in a positive statute. The authority of the Post Office Department to employ and assign him to the service in which he was engaged was derived from the statute. No discretion was lodged in the Postmaster General or his subordinates as to what compensation such employé should receive—that was fixed absolutely by Congress. It will be observed on reading the acts of Congress above referred to that Congress in each appropriation bill fixed the number of such railway postal clerks, classified them, and fixed the maximum salary to each class, which in the case of this plaintiff was $800 per annum. It is the settled and recognized policy of Congress to keep all the departments of the government, in the matter of incurring obligations for expenditures, within the appropriations annually made for conducting its affairs. Hence the general statute (Rev. St. § 3678 [U. S. Comp. St. 1901, p. 2453] ; 1 Supp. Rev. St. p. 201; Rev. St. §§ 3690, 3691 [U. S. Comp. St. 1901, p. 2471]) that:

"All sums appropriated for the various branches of expenditure in the public service shall be applied solely to the objects for which they are respectively made, and for no others."

Section 3679 [U. S. Comp. St. 1901, p. 2454] provides:

"No department of the government shall expend, in any one fiscal year, any sum in excess of appropriations made by Congress for that fiscal year, or involve the government in any contract for the future payment of money in excess of such appropriations."

So it is that in the annual appropriations for the Post Office Department providing for railway postal service, the acts prescribe the maximum number of such clerks in each classification and their maximum salaries; and in order to limit the extra expenditures incurred on account of claimed necessity in traveling on special assigned duty, it is provided in each of the appropriation bills that:

"For actual and necessary expenses of general superintendent, assistant general superintendent, chief clerk, office general superintendent, division superintendents, assistant division superintendents, chief clerks, and railway-postal clerks, while actually traveling on business of the department and away from their several designated headquarters," etc.

Congress limited the amounts as follows:

| | |
|---|---|
| For fiscal year ending June 30, 1900 | $15,000 00 |
| For fiscal year ending June 30, 1901 | 40,000 00 |
| For fiscal year ending June 30, 1902 | 26,000 00 |
| For fiscal year ending June 30, 1903 | 28,000 00 |
| For fiscal year ending June 30, 1904 | 21,000 00 |

No authority is conferred on the Post Office Department to incur any liability for traveling expenses of any railway postal clerk except when such clerk is "traveling on business of the department and

away from his designated headquarters." The clear implication is that when such employé accepts service at a specified salary, to work at an assigned place, designated as headquarters, his undertaking is to perform his assigned duty at such place, and the salary prescribed is the full compensation for his entire services, including whatever personal expenses may be incident thereto. The Post Office Department knows from experience that in conducting the multiform matters connected with a business so comprehensive, it now and then becomes important to detail certain officers and clerks, especially qualified and adapted, to some special work outside of their regular assignment, necessitating travel perhaps to distant places, which necessarily would be attended with extra expenses; and, therefore, provisions for such traveling expenses are annually made by Congress in appropriations for that department. The railway postal clerks accept service to be performed by trips on postal cars. Their places of business and the facilities for performing their duties are thus furnished by the government; and their headquarters may be designated as the initial point where their "run," like that of a railway conductor or brakeman, begins. Their regular assignment is on a postal car between different points, for the performance of which work such clerk agrees to accept a stated salary. In deciding whether or not the compensation be acceptable, he is presumed to take into account the probable outlay for expenditures incident to that particular service; as much so as any superintendent or assistant superintendent or clerk in accepting employment at a particular city or other given locality considers the matter of expense of living at the place, in deciding whether or not they will accept the service. Each is at liberty to accept or decline on the compensation offered, as it may seem to him to be sufficient or not.

The petition in this case does not state between what points the plaintiff made his runs; and as drawn it is so phrased as to give color to the idea that the pleader might have intended to have it understood that the expenses claimed were incurred in traveling on special orders from the Post Office Department, outside of his regular duties. But his counsel dealt candidly in arguing the case to the court by conceding that the expenses claimed were incident alone to the plaintiff's regular runs as a railway postal clerk. Otherwise the petition would be bad as presenting a double aspect.

Instead of an "implied contract" arising in favor of this extraordinary claim put forth by the plaintiff, the implication, to our minds, is the reverse. A legislative act is to be interpreted according to the intention of the Legislature, apparent on its face. Wilkinson v. Leland, 2 Pet. 627, 7 L. Ed. 542; United States v. Fisher, 109 U. S. 143, 3 Sup. Ct. 154, 27 L. Ed. 885. It will be observed from the acts of Congress making appropriations for the periods covered by the plaintiff's claim, the amounts of appropriations for expenses incurred by superintendents, assistants and clerks for traveling from their headquarters aggregate only $130,000, or averaging about $26,000 a year. The average annual expenses claimed by the

plaintiff are $200. As shown by the report of the General Superintendent of the Railway Mail Service, as also appears from the statutes, there were in the division alone to which the plaintiff belonged 501 clerks, and in all the classes, excluding superintendents, assistant superintendents and chief clerks there were about 12,000. If their expenses, like those claimed, average $200 per year, it would require an appropriation of $2,400,000 per year to meet them; and for the class alone to which the plaintiff belonged, it would require an annual appropriation of $100,200. This fact clearly demonstrates that it was not the mind of Congress that railway postal clerks, in addition to their fixed salaries, should be paid their expenses for bed and board while out on their runs. They are supposed to have their homes at one end of their runs, and not to be out over a day and a night at a time. Under the plaintiff's contention he is continuously traveling away from his headquarters whenever he is on duty at all, because the mail car in which he works may run daily. Whereas, the statute contemplates that traveling expenses reimbursed are such as are incurred when the employé travels under special order taking him outside of his regular routine duty. Otherwise, the special statutory provision would be meaningless and supererogatory. Where the legislative branch of the government has thus clearly indicated its purpose by its appropriations and the provisions connected therewith that the salary fixed by the act shall be full compensation to the employé for the services performed by him, and only allows for expenses incurred for bed and board when separated from his regular duty by special assignment attended with traveling expenses, to allow the claim presented by the petitioner would, in our judgment, amount to an amendment of the acts of Congress by judicial construction.

A similar claim to this was presented to and passed upon by the Court of Claims, entitled Hartman v. United States, 40 Ct. Cl. 133, 136, taking the same view of the statute above expressed, denying the claim. We have not overlooked or failed to duly consider the authorities presented in the brief of counsel for plaintiff bearing upon the doctrine of implied contracts, and the instances in which it has been applied by the Supreme Court and on the circuit for services performed for the government. We do not consider them applicable to or as controlling the case at bar, for the reason that this cause of action is wholly statutory.

The judgment of the Circuit Court in sustaining the demurrer and dismissing the petition is affirmed.