**STATE OF MINNESOTA v. KEELEY et al.**
No. 11966.

Circuit Court of Appeals, Eighth Circuit.
March 30, 1942.

Franklin B. Stevens, Sp. Counsel, State of Minnesota, of St. Paul, Minn. (J. A. A. Burnquist, Atty. Gen., P. F. Sherman, Asst. Atty. Gen., and Faner C. Wonderly, Sp. Asst. Atty. Gen., on the brief), for appellant.

Berryman Green, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., A. F. Prescott, Sp. Asst. to Atty. Gen., and Victor E. Anderson, U. S. Atty., and Linus J. Hammond, Asst. U. S. Atty., both of St. Paul, Minn., on the brief), for appellees.

Before SANBORN and JOHNSEN, Circuit Judges, and NORDBYE, District Judge.

JOHNSEN, Circuit Judge.

The question is whether the provision in section 10 of the Hayden-Cartwright Act of June 16, 1936, 49 Stat. 1521, 4 U.S.C.A. § 12, that "all taxes levied by any State * * * upon sales of gasoline and other motor vehicle fuels may be levied, in the same manner and to the same extent, upon such fuels when sold by or through post exchanges * * * and other similar agencies, located on United States military or other reservations, when such fuels are not for the exclusive use of the United States", was intended to have application only to a technical "sales" tax, and not to any other form of state gasoline or motor vehicle fuel taxes.

864

The gasoline tax of the State of Minnesota, from its language, is a "use" or "privilege" tax. Section 2720-71, Mason's Minn.St.Supp.1940, provides: "There is hereby imposed an excise tax of four cents per gallon on all gasoline used in producing or generating power for propelling motor vehicles used on the public highways of this state. * * *" The practice is for the dealer or distributor to collect the amount of the tax from the purchaser at the time of sale.

The Post Exchange of the Fort Snelling Military Reservation, which is located in the State of Minnesota, had collected from purchasers, on private sales of gasoline, made by it upon the Reservation, for use upon the highways of that state, from June 16, 1936, to June 30, 1940, gasoline taxes under the Minnesota statute amounting to $36,682.39, but it refused to account for these taxes to the State, on the ground that the Hayden-Cartwright Act had not given consent to the collection by a state of a use or privilege tax, but to a technical sales tax only.[1]

The State brought suit to recover the amount of the taxes thus collected and held, against the officers of the Reservation and Post Exchange having possession and control of the funds.[2] The action rested upon the provision in section 10 of the Hayden-Cartwright Act that "Such taxes, so levied, shall be paid to the proper taxing authorities of the State * * * within whose borders the reservation affected may be located". The defendants moved to dismiss the action, in effect upon the ground that the Minnesota gasoline tax was not such a form of tax as was within the language or purview of the Hayden-Cartwright Act, and that the State therefore was not entitled to

any relief. The trial court sustained the motion, and, in a written opinion, D. C., 36 F.Supp. 3, 6, declared: "It is my opinion that the United States consented to the imposition and collection of 'sales' taxes on motor fuels, and to such taxes only. It did not consent to the imposition of 'use' or 'privilege' taxes."

■ From the purpose and history of the statute, we do not believe that Congress intended that its language should be given such a rigid and narrow interpretation. The general purpose of the Hayden-Cartwright Act clearly was to further and extend the program of highway improvement which had been initiated by the Federal Aid Highway Act of 1916, 39 Stat. 355, through the matching of federal and state funds. Congress had previously sought to prevent any state seeking federal aid for highway construction, from diverting its "gasoline taxes", irrespective of their technical form, to any other use than the construction, improvement and maintenance of highways.[3] Section 10 was not included in the Hayden-Cartwright Act as it originally passed the House. A separate bill, sponsored by the North American Gasoline Tax Conference, was at that time pending before the House, intended to correct the general unfairness in the sale of tax-free gasoline upon government reservations for use upon state highways.[4] When the Hayden-Cartwright Act was being considered in the Senate, its sponsor requested that it be amended by adding section 10, which he declared to be in identical language with the separate bill pending before the House.[5] He indicated that the amendment was being offered in response to a resolution adopted by the Western Association of State Highway Officials,[6] which he had read to the Senate,

[1] A similar administrative interpretation seems to have been made at all U. S. military reservations, with the result that, while every state has some form of gasoline tax, whose burden is borne by the consumer at the time of sale, approximately eighty per cent of the states would be ineligible to obtain the benefit of collections made at army posts under § 10 of the Hayden-Cartwright Act. See Tax Systems, 7th Ed., p. 168.

[2] The action was instituted in the state court but was removed to the federal court by writ of certiorari, under Article 117, Articles of War, c. 227, 41 Stat. 811, 10 U.S.C.A. § 1589.

[3] See Act of June 18, 1934, c. 586, § 12, 48 Stat. 995, 23 U.S.C.A. § 55, 1938; 39 Op.Atty.Gen. 157.

[4] This bill, H.R. 3660, was introduced on January 10, 1935, with the following statement: "A bill, granting the consent of Congress to the several states to levy and collect taxes on gasoline and other motor vehicle fuels in certain instances when sold on United States military and other reservations; * * *" See Cong. Record, Vol. 79, part 1, p. 366, 74th Cong. 1st Session.

[5] See Cong.Record, Vol. 80, part 6, p. 6913.

[6] This resolution was as follows:

"Resolution Adopted by the Western Association of State Highway Officials at the Annual Meeting in Phoenix, Ariz., April 30, 1936.

"Whereas this conference views with alarm the continued sale of motor vehicle

and further stated that he had been informed by the Chief of the Bureau of Public Roads that "there is complaint in many parts of the country about the inability of the States to collect revenue on gasoline sold on Government reservations not for governmental use". The amendment was adopted without further discussion.

In the House the matter was sent to conference and was finally submitted to that body upon a written statement on the part of the members of the conference committee, in lieu of a reading of the conference report. No material change had been made in the Senate amendment. The statement read to the House, and upon which it acted, recited: "Amendment No. 14 proposes the collection of all taxes levied by any state, territory, or the District of Columbia upon gasoline or other motor vehicle fuels sold through post exchanges, ship-service stores, commissaries, filling stations, or licensed traders located on United States military or other reservations when not for the exclusive use of the United States as proposed by the Senate." [7] One of the members of the conference committee further remarked, in part: "In post exchange stores and on Government reservations, gasoline and motor vehicle fuel is being sold free from local taxes. The conferees believe that all local taxes should be collected except when the gasoline or motor vehicle fuels are for the exclusive use of the United States. * * * " [8]

In no part of these proceedings is there anything to suggest that Congress was intending to draw a line of technical distinction between a sales tax, as such, and other forms of state gasoline taxes which were collectible from a purchaser at the time of sale. It was simply seeking to correct an unfair situation generally, and to assist the states thereby to obtain more revenue for highway improvement purposes. The Western Association of State Highway Officials, pursuant to whose resolution section 10 was added to the Act, could hardly be said to have been concerned about the problem in its relation to some particular, technical form of gasoline tax. Their interest manifestly was one of general increased revenue for all the several states. That, it seems to us, from the legislative history of the Act, also was the sole concern and purpose of Congress.

▮▮ Defendants argue that a consent statute should be given a narrow legal construction. A purely legalistic focus, derived from artificial canons of statutory construction, ought not, however, to be allowed to blot out a patent remedial intent, if there is no abortive violence to the language which Congress has used. Here, it should be noted Congress has not used the technical language "all sales taxes", but the general expression "all taxes levied * * * upon sales of gasoline", which may reasonably and as a matter of lay interpretation normally would be held to mean "in connection with the sales of gasoline". Any tax which is intended to be collected from the purchaser at the time of sale is in a sufficient sense, for the purpose for which the statute was enacted, a tax in connection with the sale of gasoline.[9] "Every technical rule", said Mr. Justice Story, in the early case of Wilkinson v. Leland, 2 Pet. 627, 661, 7 L.Ed. 542, "as to the construction or force of particular terms, must yield to the clear expression of the paramount will of the legislature".[10]

fuels on Government military and other reservation, upon which no State Tax has been collected, such tax-free fuel being used on the public highways; and

"Whereas the various States have no remedy under existing laws;

"Now, therefore, be it

"Resolved, That this conference pledge its support to a bill now before Congress (H.R. 3660) sponsored by the North American Gasoline Tax Conference, which, if enacted will confer upon the several States authority to collect motor vehicle fuel taxes on all sales made on such reservations other than to the United States Government or its agencies."

[7] See Cong.Record, Vol. 80, part 8, p. 8698.

[8] Remarks of Congressman Whittington, Cong.Record, Vol. 80, part 8, p. 8701.

[9] Compare the expression in Panhandle Oil Co. v. Knox, 277 U.S. 218, 222, 48 S.Ct. 451, 453, 72 L.Ed. 857, 56 A.L.R. 583, where it was held that a state tax imposed on dealers in gasoline for the privilege of selling, and measured at so many cents per gallon of gasoline sold, was void as applied to sales to instrumentalities of the United States, because "To use the number of gallons sold the United States as a measure of the privilege tax is in substance and legal effect to tax the sale."

[10] See also United States v. Wiltberger, 5 Wheat. 76, 5 L.Ed. 37; Sweetser v. Emerson, 1 Cir., 236 F. 161, 163; 25 R. C.L. 1076 and 988.

It is further contended that the subsequent amendment of section 10 of the Hayden-Cartwright Act by section 7 of the Buck Act of October 9, 1940, 54 Stat. 1060, 4 U.S.C.A. § 12, indicates a recognition on the part of Congress that the Hayden-Cartwright Act had application to a technical sales tax only. Section 7 of the Buck Act amended section 10 of the Hayden-Cartwright Act by striking out the words "upon sales of gasoline and other motor vehicle fuels" and inserting in lieu thereof the words "upon, with respect to, or measured by, sales, purchases, storage, or use of gasoline or other motor vehicle fuels", and by striking out the words "upon such fuels" and inserting in lieu thereof the words "with respect to such fuels".

The Senate report, in setting out the purpose of the Buck Act, declared as to section 7: " * * * it contains certain clarifying amendments to Section 10 of the Federal Highway Act of June 16, 1936 (known as the Hayden-Cartwright Act permitting taxation of sales of gasoline and other motor vehicle fuel sold in Federal areas for private purposes) * * *." [11] The report further stated: "Section 7(a) of the committee amendment amends section 10 of the Hayden-Cartwright Act so that the authority granted to the States by such section 10 will more nearly conform to the authority granted to them under section 1 of this Act. At the present time a State such as Illinois, which has a so-called gallonage tax on gasoline based upon the privilege of using the highways in that State, is prevented from levying such tax under the Hayden-Cartwright Act because it is not a tax upon the 'sale' of gasoline. The amendments recommended by your committee will correct this obvious inequity and will permit the levying of any such tax which is levied "upon, with respect to, or measured by, sales, purchases, storage, or use of gasoline or other motor vehicle fuels". [12]

■ All of this seems to us only to confirm that the original intention of Congress, in enacting section 10 of the Hayden-Cartwright Act, was as we have indicated it above to have been, and that the purpose of section 7 of the Buck Act was simply to make such "clarifying amendments" as could leave no room for further possible misconstruction and as would require an immediate and full effectuation of congressional purpose. [13] In this situation, we can see no sound reason for holding that there is any such narrow absoluteness in the language "all taxes * * * upon sales of gasoline" as to require a judicial denial of the right of the State of Minnesota to the benefit of taxes which have been collected by the Post Exchange pursuant to the laws of that State, and which are now being held until their proper disposition has been the subject of legal determination. [14]

We think the judgment of the trial court should be reversed, and the cause remanded for further proceedings.

Reversed.

---

[11] S.Rep.No. 1625, p. 2, 76th Cong., 3rd Sess.

[12] Id. p. 5. The statement that a State such as Illinois had been prevented from collecting its gasoline taxes under Section 10 of the Hayden-Cartwright Act was apparently prompted by the testimony before the Committee, of the Supervisor of the Division of Research and Statistics, Department of Finance, State of Illinois. This prevention rested simply upon the administrative interpretation made at all military reservations, as indicated above, and not upon a judicial construction of the Act. In this connection, it is of interest to note the witness' further statement before the Committee: "Nevertheless, certainly no one can question that the intention of Congress was to extend the benefits of the Hayden-Cartwright Act to all states equally, regardless of the technical form their motor vehicle fuel tax laws might take." Id., p. 20.

[13] Compare Bailey v. Clark, 21 Wall. 284, 88 U.S. 284, 288, 22 L.Ed. 651, where the Court said of an amendatory act: "This enactment was evidently intended to remove any doubt previously existing as to the meaning of the statute and declare its true construction and meaning." See also Jordan v. Roche, 228 U.S. 436, 445, 33 S.Ct. 573, 57 L.Ed. 908; Alexander v. Mayor of Alexandria, 5 Cranch 1, 7, 3 L.Ed. 19.

[14] Collection and payment of the Minnesota gasoline tax have apparently been duly made by the Post Exchange to the State under the provisions of the Buck Act of October 9, 1940.