28 P.3d 996

**GOODMAN OIL COMPANY OF LEWISTON, an Idaho corporation, and Goodman Oil Company, an Idaho corporation, Plaintiffs–Respondents,**

v.

**IDAHO STATE TAX COMMISSION, Defendant–Appellant.**

No. 25994.

Supreme Court of Idaho, Boise, February 2001 Term.

June 8, 2001.

Rehearing Denied July 27, 2001.

Alan G. Lance, Attorney General, Boise, for appellant. Carl E. Olsson argued.

Jim Jones and Associates, Boise, for respondents. John C. McCreedy argued.

SCHROEDER, Justice.

This is an appeal from a district court order denying partial summary judgment to the Idaho State Tax Commission (the Commission), based on its ruling that the Commission could not levy fuel tax or transfer fees against Goodman Oil Company of Lewiston (Goodman Oil) on fuel sold to the Coeur d'Alene Indian Tribe (the Tribe).

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

The period at issue in this case spans from January 1997 through March 1998. Goodman Oil was a licensed distributor of fuel in Idaho as defined by I.C. § 63–2401(13). Goodman Oil purchased gasoline from an Exxon Terminal in Spokane, Washington. Sun Transportation, a sister corporation of Goodman Oil, transported the gasoline through the state of Washington directly to a location at the eastern border of the state and the western border of the reservation. The gasoline was transported without traveling through any part of Idaho lying outside of the reservation. The Tribe purchased the gasoline at the border of the state of Washington and the reservation. The Tribe paid Sun Transportation to haul the gasoline to the Tribe-owned Benewah Auto Center located on the reservation. Neither the Tribe nor Benewah Auto Center was a licensed distributor of fuel in Idaho.

In 1994 the Tribe and the Commission entered into an agreement that the Tribe would remit fuel tax and transfer fees to the Commission for gasoline sales made at the Benewah Auto Center to non-Indians. The Tribe has remitted payments to the Commission since that time.

Beginning in August of 1997, the Commission issued deficiency notices to Goodman Oil for gasoline sold to the Tribe from January of 1997 through March of 1998. The Commission alleged that because Goodman Oil was the owner of the fuel in Washington and the owner as it arrived in Idaho, Goodman Oil was the first receiver of the fuel and responsible for remitting the fuel tax and transfer fee. The deficiencies alleged by the Commission totaled $40,814. Goodman Oil filed timely protest to each determination. The Commission issued a final decision on May 4, 1998, and assessed Goodman Oil for existing deficiencies in the amount of $27,453, reversed the assessment of penalties and granted Goodman Oil a credit for fuel tax paid by the Tribe on the sale of fuel to non-Indians. On June 18, 1998, Goodman Oil filed its complaint in this matter with the district court. The parties filed cross-motions for summary judgment.

The district court held that the Commission could not impose the tax on Goodman Oil. The district court determined that although Goodman Oil brought the fuel into Idaho for the purposes of the Fuel Tax Act, no federal act authorized the state to tax fuel sales made on Indian reservations, and the incidence of the tax was on the consumer and therefore interfered with the Tribe's ability to exercise its sovereign functions.

## II.

### STANDARD OF REVIEW

◼ "When this Court reviews a district court's grant of summary judgment, it uses the same standard properly employed by the district court originally ruling on the motion." *Family Trust v. Christensen*, 133 Idaho 866, 870, 993 P.2d 1197, 1201 (1999). A party should be granted summary judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c).

◼ "Constitutional issues and the construction and application of legislative acts are pure questions of law over which this Court exercises free review." *Struhs v. Protection Technologies, Inc.*, 133 Idaho 715, 718, 992 P.2d 164, 167 (1999), *citing Idaho State Ins. Fund v. Van Tine*, 132 Idaho 902, 905–906, 980 P.2d 566, 569–70 (1999). "When questions of law are presented, this Court is not bound by findings of the district court, but is free to draw its own conclusions from the evidence presented." *Mutual of Enumclaw v. Box*, 127 Idaho 851, 852, 908 P.2d 153, 154 (1995).

## III.

### THE HAYDEN–CARTWRIGHT ACT DOES NOT PROVIDE CONGRESSIONAL AUTHORIZATION FOR A STATE TO IMPOSE A FUEL TAX ON THE SALE OF FUEL TO INDIANS ON INDIAN RESERVATIONS WITHIN THE STATE.

◼ It is a long-standing rule of construction that tax statutes granting the right to tax are strictly construed against the taxing authority and in favor of the taxpayer with any ambiguities to be resolved in favor of the taxpayer. *Reinecke v. Gardner*, 277 U.S. 239, 244, 48 S.Ct. 472, 474, 72 L.Ed. 866, 868 (1928). Furthermore, taxation of Indians cannot be enforced absent clear Congressional authorization. *Oklahoma Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 459, 115 S.Ct. 2214, 2220–2221, 132 L.Ed.2d 400, 409–410 (1995), *citing Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 475–481, 96 S.Ct. 1634, 1642–1645, 48 L.Ed.2d 96, 107–111 (1976). The United States Supreme Court has consistently stated:

'[t]he canons of construction applicable in Indian law are rooted in the unique trust relationship between the United States and the Indians.' *Oneida County v. Oneida Indian Nation*, 470 U.S. 226, 247 [105 S.Ct. 1245, 1258, 84 L.Ed.2d 169, 187] (1985). Two such canons are directly applicable in this case: first, the States may tax Indians only when Congress has manifested clearly its consent to such taxation, *e.g., Bryan v. Itasca County, supra*, at [426 U.S. 373] 393 [96 S.Ct. 2101, 2113, 48 L.Ed.2d 710, 723–724 (1976)]; second, statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit, *e.g., McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 174 [93 S.Ct. 1257, 1263, 36 L.Ed.2d 129, 136–137] (1973); *Choate v. Trapp*, 224 U.S. 665, 675 [32 S.Ct. 565, 569, 56 L.Ed. 941, 945–946] (1912).

*Montana v. Blackfeet Tribe*, 471 U.S. 759, 766, 105 S.Ct. 2399, 85 L.Ed.2d 753 (1985).

The Hayden–Cartwright Act (the Act) states in relevant part:

(a) All taxes levied by any State, Territory, or the District of Columbia upon, with respect to, or measured by, sales, purchases, storage, or use of gasoline or other motor vehicle fuels may be levied, in the same manner and to the same extent, with respect to such fuels when sold by or through post exchanges, ship stores, ship service stores, commissaries, filling stations, licensed traders, and other similar agencies, located on United States military

or other reservations, when such fuels are not for the exclusive use of the United States.

To summarize, the Act says that states can levy fuel tax on military or other reservations as they can outside of those reservations, on any party other than the United States government. The question in this case is whether the Indian reservation is a "reservation" included within the Act or whether the use of the term "licensed trader" supports imposition of the tax.

## A. Treatment Of The Act In Case Law As Applied To Indian Reservations

The United States Supreme Court has not addressed whether the Act applies to Indian reservations. In *Chickasaw Nation, supra,* the state of Oklahoma argued in briefing that the Act expressly authorized states to levy the motor fuel tax on Indian reservations. However, the Supreme Court declined to address the question because it was not raised in the lower court proceedings. The Court stated that Oklahoma's "newly discovered claim of vintage legislative authorization" was not "fairly included" in the question tendered for the Court's review. *Chickasaw Nation,* 515 U.S. at 457, 115 S.Ct. at 2219, 132 L.Ed.2d at 408. The United States Supreme Court in *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980), held that the Act was "not designed to overcome the otherwise preemptive effect of federal regulation of tribal timber." *Id.* at 152 n. 16, 100 S.Ct. at 2588 n. 16, 65 L.Ed.2d at 678 n. 16. The Court went on to state "[w]e do not reach the more general question of whether the Hayden–Cartwright Act applies to Indian reservations at all." *Id.*

The Commission points to the South Dakota Supreme Court decision in *Matter of the State Motor Fuel Tax Liability of A.G.E. Corp.,* 273 N.W.2d 737, 739 (S.D.1978), which held that Congress, through the Act, "grant-

ed to the states the right to exercise limited jurisdiction in taxing the use or sale of gasoline or other motor vehicle fuel" on federal areas. *A.G.E. Corp.,* however, is not on point. *A.G.E. Corp.* dealt with tax levied on a non-Indian contractor doing work for the Bureau of Indian Affairs on tribal land. The Supreme Court of South Dakota, although holding that an Indian reservation was a federal area covered by the Act, found that a tax on the contractor was not an indirect tax on the "Indian tribe, an Indian or an Indian reservation", *Id.* at 741, inferring that if it was, it would not be allowed. Cases cited by the court in *A.G.E. Corp.* for historical background of the Act use the term "federal areas" and deal with a federal dam, airplane assembly plant and military reservation— none refers to the issue of whether Indian reservations are covered by the Act or if the Act authorizes taxation of tribal members. *See State of Minnesota v. Keeley,* 126 F.2d 863, 864 (8th Cir.1942); *Sanders v. Oklahoma Tax Comm'n,* 197 Okla. 285, 169 P.2d 748 (1946).[1]

## B. The Language Of The Act

There are two references within Section 10 of the Act which the Commission argues reveal the fact that it was Congress' intent to allow the levying of fuel tax on Indian reservations. First is the use of the term "licensed trader" and second is the use of the word "reservation."

The Commission claims that the United States Supreme Court defined the term "reservation" to include Indian reservation. *See United States v. Celestine,* 215 U.S. 278, 30 S.Ct. 93, 54 L.Ed. 195 (1909). However, put in context, the Court's description of reservation in *Celestine* is not so decisive:

> But the word 'reservation' has a different meaning, for while the body of land described in the section quoted as 'Indian Country' was a reservation, *yet a reserva-*

1. *Keeley* questioned whether the Act was intended to have application only to a technical "sales" tax, and not to any other form of state gasoline or motor vehicle fuel tax in federal areas. The Eighth Circuit Court of Appeals held that it applied to all forms of tax. *Sanders* questioned whether fuel stored and used only on federal areas (not on state highways) was subject to

taxation. The Supreme Court of Oklahoma held that the purpose of the Act was to permit the various states to tax the use or sale of gasoline occurring within federal areas in exactly the same manner as though such areas did not exist, except in cases where the gasoline was to be used exclusively by the United States.

*tion is not necessarily 'Indian Country.'* The word is used in land law to describe any body of land, large or small, which Congress has reserved from sale for any purpose. It may be a military reservation, or an Indian reservation, or, indeed, one for any purpose for which Congress has authority to provide.

*Celestine,* 215 U.S. at 285, 30 S.Ct. at 95, 54 L.Ed. at 197 (emphasis added).

■ An Indian reservation is a reservation of land that Congress has withdrawn from the public domain for a variety of purposes, including Indian autonomy. Though *Celestine* is a land law case nearly a century old, the phrase "a reservation is not necessarily 'Indian Country'" still rings true. Indian reservations are different; distinct from every other type of reservation, i.e., national parks, wilderness areas, military reservations, and even further, Indian reservations are a distinct entity within the law. The use of the word "reservation" in the statute at issue, alone, does not establish that Congress had the clear and unmistakable intent of waiving tribal immunity to state fuel taxation.

Next, the Commission claims that the term "licensed trader" can only refer to licensed Indian trader. To support this assertion the Commission must prove that there were no other distributors or sellers of goods that are required to be licensed.

The Commission argues that the district court erred in interpreting and applying the federal district court decision in *Falls City Brewing Company v. Reeves,* 40 F.Supp. 35 (D.Ky.1941), to mean that "licensed trader" did not refer to licensed Indian trader. Even if the district court did err in articulating what type of reservation was at issue in that case, the case is informative as to what other kinds of licensed traders there were in 1941. The case mentions licensed seller of malt beverages, a licensed retailer on a government reservation and licensed traders on government reservations generally. The Commission's argument would mean that "licensed trader" can only be applied to those who trade with Indians; however, it is just as probable that the term "licensed trader" could refer to licensed distributors or sellers of goods in *all* federal reservations. Though Congress may have contemplated or intend-

ed the term "licensed traders" to include licensed Indian traders, they did not make that intention unmistakably clear in the Act.

The Act itself is made up of ten sections. Four of these sections contain the word "reservation," two of which use the term "reservation" in conjunction with the term "Indian." Section three uses the term "Indian Lands or other federal reservations," section six uses the phrase "Indian reservation roads." The Court can only assume that Congress was deliberate in its use and non-use of words. By not using the term "Indian reservation" or "licensed Indian trader" in the relevant portion of the Act, Congress did not make it clear that it intended to abolish tribal immunity from state motor fuel taxation.

### C. Legislative History And Subsequent Executive Interpretation

The Act was originally an amendment to the federal highway appropriations bill. The Commission contends that the text of the bill, as proposed, was modified in committee to include the terms "licensed trader" and "other reservations." As discussed above, these additions are not dispositive.

The Commission maintains that the historical context of the Act supports the notion that states needed money to build and maintain roads on Indian reservations, ergo the states needed to tax fuel on the reservations to pay for it. However, Congress had already passed legislation authorizing appropriation of funds for survey, improvement, construction and maintenance of Indian reservation roads. Pub.L. No. 520, 45 Stat. 750–751 (1928).

The opinions of the Attorney General and Solicitor of the Department of Interior cited by the Commission suggest that the Act is applicable to Indian reservations, but they are ambiguous. For example, the Attorney General Opinion of 1936, which dealt with the issue of whether national parks fell within the Act, mentions the term "Indian reservation" in passing: "It is true that some of the agencies which are expressly designated in Section 10 *apparently* are such as usually pertain to military, naval, or Indian reservations, and that section does not expressly

mention national parks." 38 U.S. Op. Atty Gen. 522 at 524 (emphasis added).

The Opinion of the Solicitor of the Department of Interior is similarly ambiguous. The Solicitor says "[t]he statute clearly subjects the sales made through the Government agencies specified to State gasoline taxes and provides the method by which such taxes shall be collected. It is not clear, however, whether the Government agencies specified are intended to include such a Federal agency as the Menominee tribal enterprise and whether the reference to reservations includes Indian reservations." 57 Interior Dec. 129 at 138 (1940). The Solicitor explains how a brief discussion surrounding the passage of the Act indicated that Congress intended to permit the application of fuel tax in areas where they were previously prohibited, thus it could be inferred that this included Indian reservations, and, the use of the term *licensed trader* was suggestive of an Indian reservation. *Id.* at 139. Later in the same opinion, the Solicitor acknowledges that purchases made by Indians on the reservation might remain exempt. However, because the Act allows states to tax all sales on reservations not previously subjected to such taxes, the Solicitor reasons that because Indians buying fuel inside the reservation have not had to pay the tax, now they do. *Id.* at 140. This interpretation of the Act is not conclusive. If the Act applies to Indian reservations at all, it is just as plausible that the Act authorizes taxation of sales made to non-Indians within the reservation that were prohibited before the Act.

The Commission makes the argument that because Congress was aware of the opinions of the Attorney General and Solicitor General, and because Congress amended the Act subsequent to those opinions, reenacting the pertinent sections without change, Congress agreed with those opinions. *See Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 869–870, 55 L.Ed.2d 40, 45–46 (1978). However, those opinions do not stand for the proposition that the Act unequivocally applies to state fuel taxation on Indian reservations. In addition, the states waited approximately forty years to mention the Act in cases before the United States Supreme Court to validate the levying of such taxes. *See e.g., White Mountain Apache Tribe v. Bracker,*

448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980). Congress was aware that the Supreme Court was addressing the language of the Act to determine if it expressly authorized state fuel tax on Indian reservations, and failed to clarify its intent to make the point unmistakably clear. *See e.g., Id.; Oklahoma Tax Comm'n v. Chickasaw Nation,* 515 U.S. 450, 115 S.Ct. 2214, 132 L.Ed.2d 400 (1995).

Another point that suggests that Congress did not unmistakably intend to abolish tribal immunity from state fuel taxation is that there have been recent attempts to pass legislation to authorize the same tax. *See* H.R. No. 3966, 105th Cong.2d Sess. (1998) and S. 550, 106th Cong. 1st Sess. (1999) (Two proposed bills that would have the effect of allowing state taxation of fuel sales on Indian reservations within the last two years.).

A final point that weighs strongly against the Commission's position is that the Commission has an arrangement with the Coeur d'Alene tribe for payment of taxes on non-Indian fuel sales and not sales to members of the Tribe. Arguably, if such payment is authorized by the Act such an arrangement would not be necessary.

■ The language of the Act, the treatment of the Act in case law, the legislative history of the Act and subsequent executive interpretation of the Act must be considered in light of the longstanding rule adhered to by the United States Supreme Court that the Indian exemption from state taxes will only be lifted when Congress has made its intention to do so unmistakably clear. Ambiguous provisions are interpreted to the benefit of the tribes. *See Cotton Petroleum Corp. v. New Mexico,* 490 U.S. 163, 109 S.Ct. 1698, 104 L.Ed.2d 209 (1989) (In the field of taxation of private parties doing business with Indian tribes, ambiguities in the law are as a rule resolved in favor of tribal independence.); *see also Cass County v. Leech Lake Band of Chippewa Indians,* 524 U.S. 103, 118 S.Ct. 1904, 141 L.Ed.2d 90 (1998) (Taxation on Indians will not be allowed unless Congress has authorized such taxation and unless it has made its intention to do so unmistakably clear.); *see also Director of Revenue of Missouri v. CoBank ACB,* 531 U.S. 316,

121 S.Ct. 941, 148 L.Ed.2d 830 (2001) (Legislative history can be used to determine express Congressional intent.). It is not unmistakably clear that Congress intended to eliminate the exemption of the Tribes from the taxes the state attempts to impose.

## IV.

### THE IDAHO FUEL TAX AND TRANSFER FEE STATUTES, I.C. §§ 63–2401 et seq. and I.C. §§ 41–4901 et seq., IMPOSE THE LEGAL INCIDENCE OF THE FUEL TAX ON THE RETAILER OF THE FUEL.

■ The Commission claims that the incidence of Idaho's fuel tax is on the distributor, and that the "incidence" inquiry should focus on who pays the tax.

The statute in effect during the period in question was I.C. § 63–405, which stated in relevant part: "[a]n excise tax is hereby imposed on all gasoline ... received. The tax is to be paid by the licensed distributor and measured by the total gallons of gasoline ... received by him." The statute in effect prior to July 1, 1997, defined "received" as follows:

(4) Gasoline ... imported into this state ... shall be deemed to be received at the time the fuels arrive in this state and by the person who is the owner of the gasoline ... when the fuels arrive in this state. Where gasoline ... brought into this state by a licensed distributor is shipped or delivered directly to a person not a licensed distributor, then the fuels shall be deemed to be received by the licensed distributor importing those fuels into this state.

I.C. § 63–2403.

After July 1, 1997, the statute was modified to read:

(4)(a) Gasoline ... imported into this state ... is received at the time the fuel arrives in this state by the person who is, at the time of the arrival, the owner of the fuel.

(b) Gasoline ... imported into this state by a licensed distributor and delivered directly to a person not a licensed distributor is received by the licensed distributor importing the fuel into this state at the time the fuel arrives in this state.

(c) Fuel arrives in this state at the time it crossed the border of this state.

Goodman Oil contends that I.C. § 63–2402 establishes that the incidence of the tax is on the "user" of the fuel, that is, the consumer. That statute states in relevant part:

(1) A tax is hereby imposed for the privilege of using the public highways upon the use or possession for use of gasoline, and the tax shall be imposed without regard to whether use is on a governmental basis or otherwise.

(2) The tax imposed in this section shall be at the same rate as specified in section 63–2405, Idaho Code, upon each gallon of gasoline used or possessed for use. The tax shall be subject to the deductions and refunds set forth in this chapter.

(3) Any person coming into this state in a motor vehicle may transport in the manufacturer's original tank of that vehicle, for his own use only, not more than (30) gallons of gasoline for the purpose of operating that motor vehicle, without complying with the provisions of this chapter.

(4) This use tax shall be a debt owing from the user to the state of Idaho.

■ It is settled law that "when Congress does not instruct otherwise, a state's excise tax is unenforceable if its legal incidence falls on a Tribe or its members for sales made within Indian Country." *Chickasaw Nation*, 515 U.S. at 453, 115 S.Ct. at 2217, 132 L.Ed.2d at 406. Although the Act does not expressly authorize the imposition of Idaho's fuel tax on the reservation (whether on Indians or non-Indians), this Court must decide if the state's fuel tax levy is nonetheless permitted.

■ The United States Supreme Court in *Chickasaw Nation* outlined the "categorical approach" to be used in evaluating a state's attempt to tax within Indian country. *See Id.* at 458, 115 S.Ct. at 2220, 132 L.Ed.2d at 409. The analysis begins with the general premise that "[A]bsent cession of jurisdiction or other federal statutes permitting it ... a State is without power to tax reservation lands and reservation Indians." *Id., citing County of Yakima v. Confederated Tribes and Bands of Yakima Nation,* 502 U.S. 251, 258, 112 S.Ct. 683, 688, 116 L.Ed.2d 687, 697 (1992).

■ The first question to answer in Indian tax cases is who bears the legal incidence of the tax. *Id.* "If the legal incidence of an excise tax rests on a tribe or on tribal members for sales made inside Indian country, the tax cannot be enforced absent clear congressional authorization." *Id.* at 459, 115 S.Ct. at 2220, 132 L.Ed.2d at 409, *citing Moe,* 425 U.S. at 475–481, 96 S.Ct. at 1642–1645, 48 L.Ed.2d at 107–111. "But if the legal incidence of the tax rests on non-Indians, no categorical bar prevents enforcement of the tax; if the balance of federal, state, and tribal interests favors the State, and the federal law is not to the contrary, the State may impose its levy … and may place on a tribe or tribal members 'minimal burdens' in collecting the toll." *Id.* at 459, 115 S.Ct. at 2220, 132 L.Ed.2d at 409, *citing Washington v. Confederated Tribes of Colville Reservation,* 447 U.S. 134, 154–157, 100 S.Ct. 2069, 2081–2083, 65 L.Ed.2d 10, 29–32 (1980), and *Dept. of Taxation and Finance of N.Y. v. Milhelm Attea & Bros.,* 512 U.S. 61, 73, 114 S.Ct. 2028, 2035–2036, 129 L.Ed.2d 52, 63–64 (1994).

■ The party who bears the legal incidence of the tax is distinct from the party who bears the economic burden. *Id.* at 460, 115 S.Ct. at 2221, 132 L.Ed.2d at 410. In determining who bears the legal incidence of the tax, absent clear language in the statute, the inquiry is one of "fair interpretation of the taxing statute as written and applied." *Id.* at 461, 115 S.Ct. at 2221, 132 L.Ed.2d at 411, *citing California Bd. of Equalization v. Chemehuevi Tribe,* 474 U.S. 9, 11, 106 S.Ct. 289, 290, 88 L.Ed.2d 9, 11–12 (1985).

In *Chickasaw Nation,* the United States Supreme Court analyzed several Oklahoma fuel statutes the state was attempting to levy within the Chickasaw Indian reservation. The format and language of those statutes are strikingly similar to those at issue in this case. For example, like I.C. § 63–2406(4) that requires the licensed distributor to collect and remit the fuel tax, Oklahoma's law requires fuel distributors to remit the amount of taxes due to the Tax Commission of that state on behalf of the retailer. *Id.* at 461, 115 S.Ct. 2221–2222, 132 L.Ed.2d at 410–411. Like I.C. § 63–2407(6), which allows the licensed distributor to deduct from future payments those taxes previously paid to the Commission that they are unable to collect from the buyer/retailer, Oklahoma's law allows distributors to deduct the uncollected amount from its future payments to the Tax Commission. *Id.* Similarly, both states' laws contain "no provision that sets off the retailer's liability when consumers fail to make payments due; neither are retailers compensated for their tax collection efforts. And, the tax imposed when a distributor sells fuel to a reservation applies whether or not the fuel is ever purchased by a consumer." *Id.* at 462, 115 S.Ct. at 2222, 132 L.Ed.2d at 411. In addition, like I.C. § 63–2407(4), which credits the distributor to reimburse him for collecting and remitting the tax on behalf of the state of Idaho, Oklahoma law provides that "for their services as 'agent of the state for [tax] collection,' distributors retain a small portion of the taxes they collect." *Id.* at 462, 115 S.Ct. at 2222, 132 L.Ed.2d at 411.

The United States Supreme Court held in *Chickasaw Nation* "[t]he import of the language and the structure of the fuel tax statutes is that the distributor collects the tax from the retail purchaser of the fuel; the motor fuel taxes are *legally imposed on the retailer* rather than on the distributor or the consumer." *Id.* at 462, 115 S.Ct. at 2222, 132 L.Ed.2d at 412–412, *citing Chickasaw Nation v. Oklahoma Tax Comm'n,* 31 F.3d 964 (10th Cir.1994) (emphasis added).

The Commission contends that the United States Supreme Court and the Idaho Supreme Court have held that earlier, similar tax statutes placed the tax on the entity paying the tax, *citing American Oil Co. v. Neill,* 86 Idaho 7, 383 P.2d 350 (1963), and *V–1 Oil Co. v. State Tax Comm'n,* 98 Idaho 140, 144, 559 P.2d 756 (1977). The taxing scheme at issue in *American Oil Co.* is distinguishable from the issue in this case, as it contained no "collect and remit" language, gave no credit or reimbursement for acting as a collecting agent for the state and gave no credit if funds become uncollectable from the purchaser. The Court in *V–1 Oil Co.* was simply following its own precedent in *American Oil.*

The district court held that the incidence of the tax fell on the consumer. The holding was based primarily on I.C. § 63–2410, which

provides that consumers can get a refund if fifty or more gallons of fuel are used in equipment not operated on the highway. The Oklahoma tax scheme had a similar exception, yet it was not of enough significance for the United States Supreme Court to shift the incidence from the retailer to the consumer. *See Chickasaw Nation*, 31 F.3d at 971.

Even though the district court found the legal incidence of the tax was on the consumer, "[w]here a judgment of the trial court is based upon alternate grounds, if the judgment can be affirmed on one of the grounds the fact that the alternative ground may have been in error is of no consequence and may be disregarded." *Fischer v. Fischer*, 92 Idaho 379, 382, 443 P.2d 463, 466 (1968). Whether the incidence of the tax is held to be on the retailer or the consumer in this case, the outcome is the same. "[I]f the legal incidence of an excise tax rests on a tribe or on tribal members for sales made inside Indian country, the tax cannot be enforced absent clear congressional authorization." *Chickasaw Nation*, 31 F.3d at 971, *citing Moe*, 425 U.S. at 475–481, 96 S.Ct. at 1642–1645, 48 L.Ed.2d at 107–111.

## V.

### THE COURT NEED NOT CONSIDER THE ADDITIONAL ISSUE RAISED BY GOODMAN OIL.

Goodman Oil raised the issue of whether the Commission had the authority to assess fuel tax and transfer fees on fuel that does not "arrive" in Idaho, and, whether Goodman Oil "received" or "owned" the fuel when it arrived in Idaho pursuant to Idaho fuel tax statutes. Because this Court has found that the Hayden–Cartwright Act does not provide Congressional authorization for a state to impose a fuel tax on the sale of fuel to Indians on Indian reservations within the state, and that the Idaho fuel tax and transfer fee statutes impose the legal incidence of the tax on the retailer, the determination of whether the transactions made by Goodman Oil are covered by the statutes is not necessary. The tax is not allowed.

## VI.

### CONCLUSION

The decision of the district court is affirmed. No costs or attorney fees on appeal.

Chief Justice TROUT, Justice WALTERS and Justices Pro Tem HART and HURLBUTT, concur.