**COEUR D'ALENE TRIBE, Plaintiff,**

v.

**Duwayne D. HAMMOND, Jr.; Coleen Grant; Larry Watson; Severina Sam Haws, Defendants.**

**Nez Perce Tribe, Plaintiff,**

v.

**Duwayne D. Hammond, Jr.; Coleen Grant; Larry Watson; Severina Sam Haws, Defendants.**

**Shoshone Bannock, Plaintiff,**

v.

**Duwayne D. Hammond, Jr.; Coleen Grant; Larry Watson; Severina Sam Haws, Defendants.**

**No. 02–CIV–185S–BLW.**

United States District Court, D. Idaho.

Aug. 23, 2002.

Rob Roy Smith, Nez Perce Tribe, Lapwai, ID, Raymond C Givens, Brian J Cleary, Givens Funke & Work, Coeur d'Alene, ID, for Coeur D'Alene Tribe of Idaho, plaintiff.

Carl E Olsson, Dep Pros Atty, Clay R Smith, Office of Attorney General, State Tax Commission, Boise, ID, for Duwayne D Hammond, Jr, Coleen Grant, Larry Watson, Severina Sam Haws, defendants.

William F Bacon, Shoshone–Bannock Tribes Trial, Attorneys Office, Fort Hall, ID, for Shoshone–Bannock Tribes, intervenor.

## AMENDED ORDER GRANTING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AND A PERMANENT INJUNCTION AND DENYING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

CARTER, District Judge.

Before the Court is Plaintiff Coeur D'Alene Tribe's motions for partial summary judgment and preliminary and permanent injunctions, Plaintiff Nez Perce Tribe's motions for summary judgment and permanent injunctions, and Defendants motions to dismiss and for summary judgment. After reviewing the moving,

opposing, and replying papers, after oral argument on June 28, 2002, and for the reasons set forth below, the Court GRANTS Plaintiffs' motions and DENIES Defendants' motions.

## I.

## BACKGROUND

Plaintiffs in these consolidated cases are Indian Tribes, each with a governing body recognized by the Secretary of the Interior. The tribes are authorized to impose taxes on property within the tribes' jurisdiction. As part of their governmental and entrepreneurial activities, the tribes own various retail gasoline stations on tribal reservations located within the state of Idaho. Additionally, there are at least two gas stations owned by tribal members on the Coeur D'Alene reservation.

The primary distributor of gasoline to the tribes was originally Goodman Oil Co. For several years, the state of Idaho imposed a 25 cent motor fuels tax on all motor fuel delivered to the tribes' retail gasoline stations within the borders of the tribes' reservations. The tribes' fuel distributor collected the motor fuels tax and remitted it to the Idaho State Tax Commission (Commission). On August 26, 1999, the Idaho District Court held that the Commission lacked the authority to collect the state motor fuel tax from distributors selling fuel to Indian reservations. On June 8, 2001, the Idaho Supreme Court affirmed that decision. *Goodman Oil Co. v. Idaho State Tax*

*Comm'n,* 136 Idaho 53, 28 P.3d 996 (2001), *cert. denied,* 534 U.S. 1129, 122 S.Ct. 1068, 151 L.Ed.2d 971 (2002). The Idaho Supreme Court reached two critical conclusions in that case. First, the Hayden–Cartwright Act, 4 U.S.C. § 104,[1] did not confer on the state the authority to impose a gasoline tax on gasoline sold on Indian tribes. *Goodman,* 28 P.3d at 1002. Second, the incidence of the state motor fuels tax, Idaho Code §§ 63–2401 *et seq.* and 41–4901 *et seq.,* fell on the Indian tribes.

After the Idaho Supreme Court's ruling, the tribes enacted fuel taxes on gas sold on the tribal reservations for use to improve and maintain roads on the tribal reservations.[2] On March 22, 2002, the Idaho state legislature passed a new motor fuel tax, which the Governor signed on March 23, 2002. The legislature declared that the purpose of the new law was to place the incidence of the tax on the fuel distributors, not the tribes, so as to circumvent the ruling in *Goodman.* The Commission then began requiring City Service, Inc. of Kalispell (City Service), the tribes' new gasoline distributor, to collect and remit the gasoline tax. The tribes brought this suit to enjoin Defendants, as members of the Commission, from collecting the motor fuel tax. Because of the identity of the issues, the Court consolidated these cases. Plaintiffs now move for partial summary judgment and for a permanent injunction. Defendants bring counter-motions to dismiss and for summary judgment. The entire case is now before the Court.

---

**1.** The Hayden–Cartwright Act provides, in part:

All taxes levied by any State, Territory, or the District of Columbia upon, with respect to, or measured by, sales, purchases, storage, or use of gasoline or other motor vehicle fuels may be levied, in the same manner and to the same extent, with respect to such fuels when sold by or through post exchanges, ship stores, ship services stores, commissaries, filling stations, licensed trad-

ers, and other similar agencies, located on United States military or other reservations, when such fuels are not for the exclusive use of the United States.

4 U.S.C. § 104.

**2.** The Coeur D'Alene tribe imposed a 25 cent per gallon tax, the same as the Idaho state fuel tax. The Nez Perce Tribe imposed a 15 cent tax.

## II.

## LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).

The Court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). However, the existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; to defeat the motion, the non-moving party must affirmatively set forth facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. *Id.* at 256, 106 S.Ct. at 2514. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence of a genuine issue of material fact from the non-moving party. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir.1990). The moving party need not disprove the other party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genu-ine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence .... will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

### B. Permanent Injunction

Generally, courts grant equitable relief in the event of irreparable injury and the inadequacy of legal remedies. *See Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir.1994). When a plaintiff's constitutional rights are violated, there is a presumption of irreparable harm. An injunction is therefore the appropriate remedy for a constitutional violation.

## III.

## DISCUSSION

"The Constitution vests the Federal Government with exclusive authority over relations with Indian tribes ..., and in recognition of the sovereignty retained by Indian tribes even after formation of the United States, Indian tribes and individuals generally are exempt from state taxation within their own territory." *Montana v. Blackfeet Tribe*, 471 U.S. 759, 764, 105 S.Ct. 2399, 2402, 85 L.Ed.2d 753 (1985). A state may not levy a tax on an Indian tribe or on members of a tribe inside Indian country without express approval of Congress. *Oklahoma Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 458, 115 S.Ct. 2214, 2220, 132 L.Ed.2d 400 (1995). The critical question is therefore who bears the legal incidence of the tax. *Id.* "If the legal incidence of an excise tax rests on a tribe or tribal members for sales made inside Indian country, the tax

cannot be enforced absent clear congressional authorization." *Id.*

The critical questions for the Court is whether there is a congressional authorization to impose a tax on Indians and whether Idaho's amended motor fuel tax places the incidence of the tax on the tribes.

## A. Congressional Authority to Tax

Defendants argue that the Hayden–Cartwright Act provides authority for the state to impose a motor fuel tax on Indians. The United States Supreme Court has twice explicitly refused to address this question. In *Oklahoma Tax Commission*, 515 U.S. at 456–57, 115 S.Ct. at 2219, the Supreme Court was faced with the question of whether the state of Oklahoma could impose its motor fuels tax on Indians. Oklahoma asserted that the tax was specifically authorized by Congress in the Hayden–Cartwright Act. *Id.* The Supreme Court refused to entertain the argument because the state raised the issue for the first time in its brief on the merits. *Id.* The Supreme Court then went on to hold that the incidence of the Oklahoma tax fell on the Indians and it was therefore barred. *Id.* at 467, 115 S.Ct. at 2224.

In *Goodman Oil*, the issue was placed squarely before the Idaho Supreme Court, which determined that the Idaho tax was not authorized by the Hayden–Cartwright Act, and the state motor fuels tax which placed the incidence of the tax on Indians was barred by the federal Constitution. 28 P.3d at 996. The state sought a writ of certiorari from the United States Supreme Court, which the Court denied. *Idaho State Tax Comm'n v. Goodman Oil Co.*, 534 U.S. 1129, 122 S.Ct. 1068, 151 L.Ed.2d 971 (2002). Thus, even though the issue was squarely before the Court, it declined to resolve the question. It therefore let stand the Idaho Supreme Court's decision that the state tax was unconstitutional as applied to Indians.

Because neither of these rulings bind this Court on the issue of whether the Hayden–Cartwright Act allows states to impose a motor fuels tax on Indians, the Court must examine the merits of the issue independently.[3] Nevertheless, the Court holds that the Hayden–Cartwright Act is not a congressional authorization to impose a motor fuels tax on Indians.

■ Initially, the Court must recognize the unique trust relationship that exists between the United States and the Indian Nations. *Oneida County v. Oneida Indian Nation*, 470 U.S. 226, 247, 105 S.Ct. 1245, 1258, 84 L.Ed.2d 169 (1985). Statutes affecting Indians are therefore to be construed broadly, with any ambiguous provision to be interpreted to their benefit. *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 174, 93 S.Ct. 1257, 1263, 36 L.Ed.2d 129 (1973). Thus, unless Congress has been explicit in granting states authority to tax Indians, the Court should construe the statute as not allowing the taxation. Defendants, however, argue that these cannons of interpretation do not apply to laws of general applicability. In *McClanahan*, 411 U.S. at 174, 93 S.Ct. at 1263, however, the Court applied these same cannons in holding that Indians living and working on Indian reservations were not subject to state income taxes.

■ The Hayden–Cartwright Act is not specific enough to authorize a motor fuels tax on Indian gas stations located in Indian Country. Defendants contend that the Act's language, which allows the imposition of a state motor fuels tax when the fuel is sold on "United States military or other

---

**3.** Plaintiffs contend that the Commissioners are collaterally estopped from arguing the Hayden–Cartwright Act allows states to impose a motor fuels tax on Indians. This, however, is a question of law, and collateral estoppel applies only to questions of fact.

reservations, when such fuels are not for the exclusive use of the United States," 4 U.S.C. § 104, includes Indian Reservations. Although Indian Reservations might come to mind when discussing reservations, the term "reservation" has a much broader meaning. "The word is used in the land law to describe any body of land, large or small, which Congress has reserved from sale for any purpose." *United States v. Celestine*, 215 U.S. 278, 285, 30 S.Ct. 93, 95, 54 L.Ed. 195 (1909). A reservation includes military bases, national parks and monuments, wildlife refuges, and federal property. Although Indian country might be included in that, given the trust relationship that exists between the United States and Indian nations, Congress must be more explicit if it intends to allow states to tax Indians.

Furthermore, the types of reservations referred to in the Hayden–Cartwright Act do not appear to be the same as Indian Reservations. By allowing states to impose motor fuels taxes on gas sold on United States Military Reservations, Congress was waiving the federal government's sovereign immunity to tax collections by state agencies. *Cf. M'Culloch v. Maryland*, 17 U.S. (4 Wheat) 316, 328, 4 L.Ed. 579 (1819) ("An unlimited power to tax involves, necessarily, a power to destroy.") But simply because Congress was willing to give up (to a limited extent) the federal government's exemption from state motor fuels taxes does not mean that Congress was willing to do the same for Indians.[4]

Members of Congress appear to recognize that more explicit language is required. Congress has had before it two bills in recent years to allow state taxation of fuel sales on Indian reservations. *See* H.R.3966, 105th Cong. (1998); S. 550,

106th Cong. (1999). Even in face of the Idaho Supreme Court's decision in *Goodman Oil*, Congress has not created a specific authorization for states to tax motor fuels sold on Indian Reservations.

The Court therefore agrees with the Idaho Supreme Court's decision in *Goodman Oil*, 28 P.3d at 1002, that the Hayden–Cartwright Act does not authorize states to tax motor fuel sales on Indian Reservations.

**B. Incidence of the Tax**

Because there is no congressional authorization of the tax at issue here, the question is whether the incidence of the tax falls on the Indians. *Oklahoma Tax Comm'n*, 515 U.S. at 458, 115 S.Ct. at 2220 ("The initial and frequently dispositive question in Indian tax cases, therefore, is who bears the legal incidence of a tax."). Determination of whom the legal incidence falls on is one of "fair interpretation of the taxing statute as written and applied." *Cal. Bd. of Equalization v. Chemehuevi Tribe*, 474 U.S. 9, 11, 106 S.Ct. 289, 290, 88 L.Ed.2d 9 (1985) (per curiam). The question, is in part, on whom the law places the obligation to pay the tax. A party does not bear the legal incidence of the tax if it is merely a transmittal agent for the state tax collector. *Oklahoma Tax Comm'n*, 515 U.S. at 461–62, 115 S.Ct. at 2222. Under such a "collect and remit" scheme, the state enlists one party in a commercial transaction to collect the tax from the other party. For instance, Plaintiffs here contend that the Idaho tax scheme is just such a "collect and remit" scheme, with the distributors merely collecting from the Indian retailers on whom the legal incidence falls.

---

4. It would be odd indeed had Congress done that, because although it carved out an exception for fuels "for the exclusive use of the United States," it did not make the same exception for fuels that are for the exclusive use of Indian tribes.

At oral argument, counsel for Defendants stated that "everyone understands that the economic incidence of this tax will be borne by the consumer. That's just the way the market works." Indeed, the motor fuel tax is a relatively transparent tax. The amount of state and federal taxes is often posted for consumers to see on the pumps at filling stations. As Defense counsel here notes, it is generally accepted that motor fuel taxes are passed completely from the distributor to the retailer to the consumer without any serious market complications. The Supreme Court, however, has held that the economic incidence of the tax cannot be the basis for determining who bears the legal incidence of a tax. *Oklahoma Tax Comm'n*, 515 U.S. at 460, 115 S.Ct. at 2222. Instead, the Court must examine the detail of the statute.

At the outset, the Court knows that the legal incidence of the Idaho motor fuel statute prior to the most recent amendments fell on the Indian retailers. *Goodman Oil*, 28 P.3d at 1002. Because the State Supreme Court is the final arbiter of state law, the determination by the Idaho Supreme Court is conclusive and binding as to the former statute. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The only question is whether the amendments to the statute change the legal incidence.

In determining that the legal incidence of the old Idaho tax, the Idaho Supreme Court compared the Idaho statute to the Oklahoma statute at issue in *Oklahoma Tax Commission*. *Goodman Oil*, 28 P.3d at 1003. The Idaho Supreme Court found that the two statutes are "strikingly similar." *Id.* Both statutes allow the licensed distributor to deduct from future payments those taxes previously paid to the Commission that they are unable to collect from the retailer, but the retailers are neither allowed to set off their liability when consumers fail to make payments

nor compensated for their tax collection efforts. *Id.* Finally, both statutes impose the tax once a distributor sells fuel to a reservation, and the tax applies whether or not the fuel is ever purchased by a consumer. *Id.*

■ The changes made to the Idaho motor fuels tax were minimal. The Legislature specifically amended the motor fuels tax to express the intent of the legislature "to modify the holding of the Idaho Supreme Court in ... *Goodman Oil* ... to expressly impose the legal incidence of the motor fuels tax on the distributor who receives ... the fuel in this state." 2002 Idaho Session Laws Chapter 174, § 1. According to the amended statute, the motor fuels tax is "imposed upon receipt of motor fuel in this state by any distributor receiving motor fuel upon which the tax imposed by this section has not been previously paid." Idaho Code § 63–2402. Importantly, Idaho's amended tax still provides the mechanism for the distributor to obtain a refund if the retailer does not pay the tax. Idaho Admin.Code § 35.01.05.180.02. Thus, even while declaring the distributor legally obligated to pay the tax, the legislature imposed no real burden on the distributor. Instead, the statute retains the "pass through" quality of the prior statute. No difference exists between the old statute and the new one. The amended statute must therefore still be a "collect and remit" scheme which places the incidence of the tax on the Indian retailers.

Defendants argue that the mere incantation by the legislature that the legal incidence falls on the distributor is conclusive. They cite the Supreme Court's statement in *Oklahoma Tax Commission* that the state could simply declare who the incidence falls on. 515 U.S. at 460, 115 S.Ct. at 2221. That statement, however, was merely dicta. Certainly, the Court could

not expect the state to make no changes in the substance of the tax and thereby allow it to avoid the constitutional prohibition of imposing taxes on Indians. Moreover, such a simplistic view would undo the nuanced application of the law that the Court undertook in *Oklahoma Tax Commission.*

The Court is also presented with a serious concern over the constitutionality of the amended statute the way Defendants seek to construe it. If the statute were to in fact place the incidence of the tax on the distributor, therefore making the taxable event the entry into the state, it might place an impermissible barrier on interstate commerce. *See* U.S. Const. art. I, § 8, cl. 3. If the incidence of the motor fuel tax falls on the distributors, and the distributors may in fact be held legally liable by the Commission for payment of the tax, then interstate distributors are faced with an extra burden in delivering the motor fuel into Idaho. This could burden interstate commerce. Moreover, if the taxable event is, as Defendants contend, the entry of the tax into the state, then the owner of the motor fuel would face a double tax if it decided that instead of selling it to Idaho consumers, it would re-sell the motor fuel to distributors in a neighboring state. The owner's price to the out-of-state retailer would increase 25 cents per gallon above the market price. This restriction in the ability to re-sell to other retailers in other states makes motor fuel less fungible in interstate commerce and may be an undue burden. Because the Court is required to construe statutes to avoid a constitutional question, this provides an alternative ground to determine that the incidence falls on the retailer, not the distributor.

## IV.

### CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss and for summary judgment are DENIED. Plaintiffs' motions for summary judgment and for a permanent injunction are GRANTED. Plaintiffs shall prepare and lodge a judgment within five (5) days of this order.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants and each of them are permanently enjoined from enforcing the Idaho Motor Fuel Tax Act, I.C. § 36–2401, *et seq.* as enacted on March 23, 2002, with respect to motor fuel delivered to, received by, or sold by Tribal or Indian owned retail gasoline stations on the Coeur D'Alene, Nez Perce, or Shoshone Bannock Reservations; and

IT IS FURTHER ORDERED that the funds deposited in escrow pursuant to the Temporary Restraining Order issued in this case on April 29, 2002, and extended from time to time thereafter, shall be released to Plaintiffs after time to appeal from this order has expired under the Federal Rules of Appellate Procedure; and

IT IS FURTHER ORDERED that this order and the judgment of the Court may be stayed pending appeal without the posting of a bond upon the filing by Defendants of a notice of appeal within the time allowed for under the Federal Rules of Appellate Procedure; and

IT IS FURTHER ORDERED that during the pendency of any appeal, Plaintiffs shall continue to have deposited in an escrow account all tribal fuel tax revenues received by Plaintiffs in the same manner as set forth in the Temporary Restraining Order issued in this case on April 29, 2002; and

IT IS FURTHER ORDERED that this Injunction is binding upon the Defendants, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them

who receive actual notice of this order by personal service or otherwise.

IT IS SO ORDERED.

## JUDGMENT

This action for permanent injunction came before the Court at a hearing on June 28, 2002, Honorable David O. Carter, United States District Judge, presiding, and the issues having been duly heard, and an ORDER having been duly rendered on August 16, 2002,

IT IS ORDERED, ADJUDGED AND DECREED that:

1. The Defendants' motions to dismiss and for summary judgment are DENIED. Plaintiffs' motions for summary judgment and for a permanent injunction are GRANTED.

2. That Defendants and each of them are permanently enjoined from enforcing the Idaho Motor Fuel Tax Act, I.C. § 36–2401, *et seq.* as enacted on March 23, 2002, with respect to motor fuel delivered to, received by, or sold by Tribal or Indian owned retail gasoline stations on the Coeur d'Alene, Nez Perce, or Shoshone Bannock Reservations; and

3. That the funds deposited in escrow pursuant to the Temporary Restraining Order issued in this case on April 29, 2002, and extended from time to time thereafter, shall be released to Plaintiffs after time to appeal from this judgment has expired under the Federal Rules of Appellate Procedure; and

4. The judgment of the Court may be stayed pending appeal without the posting of a bond upon the filing by Defendants of a notice of appeal within the time allowed for under the Federal Rules of Appellate Procedure; and

5. That during the pendency of any appeal, Defendants and each of them are permanently enjoined from enforcing the Idaho Motor Fuel Tax Act, I.C. § 36–2401,

*et seq.* as enacted on March 23, 2002, with respect to motor fuel delivered to, received by, or sold by Tribal or Indian owned retail gasoline stations on the Coeur d'Alene, Nez Perce, or Shoshone Bannock Reservations, and Plaintiffs shall continue to have deposited in an escrow account all tribal fuel tax revenues received by Plaintiffs in the same manner as set forth in the Temporary Restraining Order issued in this case on April 29, 2002; and

6. This judgement is binding upon the Defendants, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise.